**760**

NOW, et al., Plaintiffs,

v.

**OPERATION RESCUE, et al.,**
**Defendants.**

**Civ. A. No. 89–2968–LFO.**

United States District Court,
District of Columbia.

July 31, 1990.

Laurence J. Eisenstein, Steven Semeraro, Richard H. Seamon, Covington & Burling, Washington, D.C., Sarah E. Burns, Alison Wetherfield,* NOW Legal Defense & Educ. Fund Washington, D.C. and New York City, for plaintiffs.

C. Peter Thomas S. Cornell, Amshoff & Amshoff Louisville, Ky., Richard L. Swick, Washington, D.C., Jay Alan Sekulow, Atlanta, Ga., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

An Order filed January 20, 1990 denied defendants' motion to dismiss, granted plaintiffs' motion for summary judgment, and entered a permanent injunction enjoining defendants from, *inter alia*, "trespassing on, blockading, impeding or obstructing access to or egress from any facility at which abortions, family planning, or gynecological services are performed in the District of Columbia." *See* Permanent Injunction at 2–3. The injunction was based on reasons to be amplified in a forthcoming Memorandum. This is that Memorandum.

### I.

Plaintiffs include four health care facilities that provide abortion services, an organization that operates two such facilities, and five organizations that seek to establish and preserve a woman's right to choose an abortion. Defendants are four organizations and six individuals who are opposed to abortion and its legalization. On October 27, 1989, plaintiffs filed a complaint and an application for injunctive relief, seeking to enjoin planned blockades of plaintiff clinics. A hearing on plaintiffs' application was held on November 7 and 8, 1989, and a preliminary injunction was issued on November 8, 1989. *See NOW v. Operation Rescue*, 726 F.Supp. 300 (D.D.C. 1989). The preliminary injunction was based upon findings that plaintiffs were likely to succeed in proving that defendants had blockaded medical facilities in the past and were likely to do so in the future, and that such blockades violate local prohibi-

* not admitted to practice in D.C.

tions against trespassing, public nuisance, and tortious interference with business relations. *See id.* at 304.

The preliminary injunction was limited to certain named clinics in the District of Columbia. Accordingly, on November 8, 1989, plaintiffs filed complaints in federal court in Maryland and Virginia seeking similar injunctive relief in those jurisdictions. *See* Plaintiffs' Cross-Motion for Summary Judgment at Exhibits A, B, C. The Maryland court entered a preliminary injunction on November 8, after receiving affidavits identical to those introduced at the hearing before this Court. *See id.* at Exhibit D. In Virginia, a Temporary Restraining Order was entered on November 9, and later extended on November 16. *See NOW v. Operation Rescue,* 726 F.Supp. 1483, 1486 n. 1 (E.D.Va.1989) ("*Virginia Findings*"). With the parties' consent, the hearing on plaintiffs' application for a preliminary injunction in Virginia was consolidated with the trial on the merits, pursuant to Federal Rule of Civil Procedure 65(a)(2). *See id.* at 1486. Plaintiffs presented nine witnesses during a two-day trial on November 16 and 20, including clinic directors from Virginia, Maryland, and the District of Columbia. Defendants presented no witnesses. *See id.* Following the trial on the merits, the Virginia court entered a Permanent Injunction on November 22, and filed written Findings of Fact and Conclusions of Law on December 6, 1989. *See id.* at 1483, 1486 n. 1.

In this action, defendants have moved to dismiss plaintiffs' complaint for lack of standing and failure to state a claim. Plaintiffs in turn have moved for summary judgment, arguing that the Virginia court's determination is *res judicata* and that no material facts remain in dispute. In opposing plaintiffs' summary judgment motion, defendants have argued that the Virginia court's ruling is not entitled to preclusive effect and that defendants' actions are protected by their constitutional right of association and the common law doctrine of justification.

## II.

Defendants' motion to dismiss raises two jurisdictional issues: (A) whether plaintiffs have standing to assert their claims and (B) whether jurisdiction over plaintiffs' local law claims is appropriate.

## A.

■ Defendants first argue that plaintiff clinics lack standing to assert the rights of their patients. This argument applies only to the federal claims, as plaintiff clinics' local law claims are based on their own rights. To establish standing to assert the rights of third parties, plaintiff clinics must overcome both constitutional and prudential barriers. First, the clinics must allege a sufficiently concrete "injury in fact" to create a case or controversy under Article III. *See Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). Second, the clinics must show that they are "the proper proponents of the particular legal rights on which they base their suit." *Id.* Based on the facts alleged in the complaint, plaintiff clinics can overcome both of these barriers. The complaint clearly alleges an injury in fact, based on the blockades of plaintiff clinics by defendants. *See* Complaint at ¶¶ 34–35. Moreover, the clinics are the proper proponents of their patients' abortion rights for two reasons: first, "the constitutionally protected abortion decision is one in which the physician is intimately involved"; and second, patients face practical obstacles to effective advocacy, such as a desire to protect their own privacy and the inherent mootness of any individual claim. *See Singleton,* 428 U.S. at 117–18, 96 S.Ct. at 2875–76; *see also Planned Parenthood Ass'n of Cincinnati v. City of Cincinnati,* 822 F.2d 1390, 1396 (6th Cir.1987) (holding that clinics providing abortion services have standing to assert the rights of their patients, as those rights are " 'inextricably bound up' with the activity the ... clinic desires to pursue") (quoting *Singleton,* 428 U.S. at 114, 96 S.Ct. at 2874)). The Virginia court reached a similar holding. *See Virginia Findings,* 726 F.Supp. at 1491.

■ Defendants' argument that the organizational plaintiffs lack standing is similarly misplaced. The complaint alleges, and defendants have not disputed, that each of the organizational plaintiffs has as members "women who will need to use abortion and family planning clinics in the Washington Metropolitan area." Complaint at ¶¶ 5–8. The organizational plaintiffs therefore have standing to assert the rights of those members. *See New York State Club Ass'n v. City of New York*, 487 U.S. 1, 6, 108 S.Ct. 2225, 2230, 101 L.Ed.2d 1 (1988) (holding that an association has standing to sue on behalf of its members when those members would have standing to sue on their own behalf); *New York State NOW v. Terry*, 886 F.2d 1339, 1348–49 (2d Cir.1989) (holding that various abortion rights organizations had standing as representatives of their members to challenge blockades of abortion clinics). The Virginia court likewise found that the organizational plaintiffs had standing. *See Virginia Findings*, 726 F.Supp. at 1491–92.

### B.

■ Defendants also object to the exercise of pendant jurisdiction over plaintiffs' local law claims. Plaintiffs' local law claims are cognizable in federal court, however, because plaintiffs' federal claims are "not insubstantial" and the federal and state claims would "ordinarily be tried in one judicial proceeding." *See NOW v. Operation Rescue*, 726 F.Supp. at 304 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The substantiality of plaintiffs' federal claims is evidenced by the Virginia court's judgment entered in plaintiffs' favor on one of those claims. *See Virginia Findings*, 726 F.Supp. at 1492–93.

### III.

Plaintiffs' complaint sets forth five claims: (1) conspiracy to interfere with the right to travel; (2) conspiracy to interfere with the right to privacy; (3) trespass; (4) public nuisance; and (5) tortious interference with business relationships. Based on the prior proceedings in the Virginia litigation and the preclusive effect of that judgment, plaintiffs are entitled to summary judgment on the federal right to travel claim and the local law claims of trespass and public nuisance.[1] The Virginia court conclusively determined that defendants' actions comprise a conspiracy to interfere with plaintiffs' constitutionally protected right to travel. The Virginia court also determined facts which establish that defendants have violated District of Columbia law and are likely to do so in the future.

### A.

The following findings of fact made by the Virginia court are relevant to this proceeding:

14. It is indisputable that all defendants share a deep commitment to the goals of stopping the practice of abortion and reversing its legalization. To achieve these goals, it appears from the record that the individual defendants have agreed and combined with one another and with defendant Operation Rescue to organize, coordinate and participate in "rescue" demonstrations at abortion clinics in various parts of the country, including the Washington Metropolitan area. The purpose of these "rescue" demonstrations is to disrupt operations at the target clinic and indeed ultimately to cause the clinic to cease operations entirely. No one has put this point any better than defendant Terry, who in an

1. The Virginia court addressed, but did not decide, the federal claim based on conspiracy to interfere with patients' privacy rights and the local law claim based on tortious interference with business relationships. The court stated that it avoided the federal privacy claim because the law "is in a state of flux" and "there is another independent basis for relief under Section 1985(3)." *Virginia Findings*, 726 F.Supp. at 1494. The court stated that it dismissed the

interference with business relationships claim without prejudice "[b]ecause the record is unclear ... and because relief is granted on the other state claims." *Id.* at 1495–96. The Virginia court's reasoning is equally applicable to this case. The right to travel, trespass, and public nuisance claims provide fully adequate grounds for relief. The remaining privacy and interference with business relationships claims, therefore, need not be addressed.

affidavit, states that "while the child-killing facility is blockaded, no one is permitted to enter past the rescuers.... Doctors, nurses, patients, staff, abortion-bound women, families of abortion-bound women—all are prevented from entering the abortuary while the rescue is in progress." Operation Rescue's literature defines "rescues" as *"physically blockading abortion mills with [human] bodies, to intervene between abortionists and the innocent victims."* Operation Rescue, National Day of Rescue—October 29, 1988 (1988) (emphasis in original). By disrupting and blockading family planning and abortion clinics, defendants and their followers hope (i) to prevent abortions, (ii) to dissuade women from seeking a clinic's abortion services and (iii) to impress upon members of society the moral righteousness and intensity of their anti-abortion views.

15. The individual defendants, acting through and in concert with Operation Rescue, have organized "rescue" events under the names D.C. Project, Project Rescue and Veterans' Campaign for Life. These "rescue" events focused on abortion clinics in the Washington Metropolitan area and the record is replete with references confirming the individual "defendants" involvement in these events. For example, defendant Gannett is the Executive Director of Project Rescue and defendants Mahoney, McMonagle and Michael Bray have assisted Operation Rescue in the organization and coordination of the District of Columbia Project and Project Rescue. Defendant Terry agreed to address an October 6, 1989 Project Rescue rally organized by defendant Gannett.

16. Because "rescuers" trespass on to clinic property and physically block ingress and egress from the clinic, existing and prospective patients, as well as physicians and medical staff are unable to enter the clinic to render or receive medical or counselling services. This creates a substantial risk that existing or prospective patients may suffer physical or mental harm. Trial witnesses, in uncontradicted testimony, convincingly illustrated this point. For example, for some women who elect to undergo an abortion, clinic medical personnel prescribe and insert a pre-abortion laminaria to achieve cervical dilation. In these instances, timely removal of the laminaria is necessary to avoid infection, bleeding and other potentially serious complications. If a "rescue" demonstration closes a clinic, patients requiring the laminaria removal procedure or other vital medical services must either postpone the required treatment and assume the attendant risks or seek the services elsewhere. Uncontradicted trial testimony established that there were numerous economic and psychological barriers to obtaining these services elsewhere. Hence, a "rescue" demonstration creates a substantial risk that a clinic's patients may suffer physical and mental harm.

17. Uncontradicted trial testimony by Dickinson–Collins, a trained mental health professional, established that blockading clinics and preventing patient access could cause stress, anxiety and mental harm (i) to women with abortions scheduled for that time, (ii) to women with abortion procedures (i.e., laminaria insertion) already underway and (iii) to women seeking counselling concerning the abortion decision.

18. Substantial numbers of women seeking the services of clinics in the Washington Metropolitan area travel interstate to reach the clinics. For example, approximately twenty (20) to thirty (30) percent of patients served at the Commonwealth Women's Clinic in Falls Church, Virginia come from out of state. Records for these patients reflect permanent residence addresses in Maryland, the District of Columbia, Pennsylvania, Texas, West Virginia, New Jersey, New York, and Florida. And at the Hillview Women's center in Forestville, Maryland, a majority of the patients travel from out of state to obtain abortion services at the clinic. "Rescue" demonstrations, by blocking access to clinics, therefore have the effect of obstructing and interfering with the interstate travel of these women.

19. Defendants' use of "rescue" demonstrations as an anti-abortion protest is not a recent phenomenon. For example, on almost a weekly basis for the last five (5) years, Commonwealth Women's Clinic has been the target of "rescue" demonstrations by Operation Rescue. One of the largest of these occurred on October 29, 1988. That "rescue" succeeded in closing the Clinic from 7:00 a.m. to 1:30 p.m., notwithstanding the efforts of the Falls Church Police Department. "Rescuers" did more than trespass on to the clinic's property and physically block all entrances and exits. They also defaced clinic signs, damaged fences and blocked ingress into and egress from the Clinic's parking lot by parking a car in the center of the parking lot entrance and deflating its tires. On this and other occasions, "rescuers" have strewn nails on the parking lots and public street abutting the clinics to prevent the passage of any cars. Less than a year later, in April 1989, a similar "rescue" demonstration closed the Metropolitan Family Planning Institute in the District of Columbia for approximately four (4) hours.

20. More recently, defendants organized and planned a series of meetings, rallies and "rescues" in the Washington Metropolitan area for the weekends of November 10-12 and 18-20, 1989. These events were the impetus for plaintiffs' filing of this action. Although no Virginia clinics were "rescue" targets, several clinics elsewhere in the Washington Metropolitan area were subjected to "rescue" demonstrations. Clinics in Maryland and the District of Columbia were closed as a result of "rescues" on November 10, 11 and 12, 1989. The following weekend, on November 18, 1989, the Hillcrest Women's Surgi–Center in the District of Columbia was closed for eleven (11) hours as a result of a "rescue" demonstration. Five (5) women who had earlier commenced the abortion process at the clinic by having laminaria inserted were prevented by "rescues" from entering the clinic to undergo timely laminaria removal.

21. Defendants['] use of "rescue" demonstrations as an anti-abortion protest is also widespread geographically. "Rescues" have taken place in many places across the country and have been enjoined in New York, Pennsylvania, Washington, Connecticut, and California, as well as the Washington Metropolitan area. Recent "rescue" demonstrations in the District of Columbia and Maryland were carried out in violation of federal injunctions.

*Virginia Findings*, 726 F.Supp. at 1488–90.

Based on these findings, the Virginia court determined that defendants' actions violated 42 U.S.C. § 1985(3), as well as the Virginia law against trespass and the common law prohibition of public nuisance. As to the § 1985(3) conspiracy claim, the court found that defendants had engaged in a "conspiracy for the purpose, either directly or indirectly, of depriving women seeking abortion and related medical and counselling services, of the right to travel." *Virginia Findings*, 726 F.Supp. at 1492–93. The court also found that defendants' "history of obstructionist activity" satisfied the overt act requirement of § 1985(3), and that "the serious threat of harm" posed by clinic blockades satisfied the injury element of § 1985(3). *See id.* at 1493. As to trespass, the Virginia court found "that defendants (i) entered and remained on the property of some of plaintiffs after having been forbidden to do so, (ii) instigated and encouraged others to enter and remain on that property knowing that such persons have been forbidden to do so, and (iii) entered that property for the purpose, at least, of interfering with the rights of the owners to conduct their business and of the users to obtain medical and counselling services." *Id.* at 1494–95. As to public nuisance, the court stated: "The undisputed record discloses that by trespassing on to a clinic's property for the purpose of blocking ingress into and egress from the property, and by hindering use of the parking lots and adjacent streets defendants' 'rescue' demonstrations have created a public nuisance. *Id.* at 1495 (citing *New York*

*State NOW v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989)).

B.

The Virginia court's determinations of fact and law are entitled to preclusive effect in this proceeding. The general principle of preclusion—that parties may not relitigate issues of fact and law that have been conclusively determined by a court of competent jurisdiction—is well settled. The rule, alternatively called issue preclusion or collateral estoppel, advances both public and private interests: "protection of litigants from the burden of unnecessary litigation, promotion of respect for the judicial process and confidence in the conclusiveness of judicial decision-making, avoidance of disconcertingly inconsistent results, and securing the peace and repose of society." *Clark–Cowlitz Joint Operating Agency v. FERC,* 775 F.2d 366, 373 (D.C. Cir.1985), *vacated on other grounds,* 787 F.2d 674 (D.C.Cir.1986). The Supreme Court has stated that the enforcement of issue preclusion "is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person or property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them." *Southern Pacific R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897), *quoted in* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* ("Wright & Miller") § 4416 at 137 (1981).

The specific requirements of the rule have been concisely summarized as follows:

[Issue preclusion] comes into play when an issue involved in a prior decision is the same issue involved in a subsequent action; the issue is actually decided in the first action after a full and fair opportunity for litigation; it was necessary to decide the issue in disposing of the first action; the later litigation is between the same parties and the role of the issue in the second action was foreseeable in the first action.

*Butler v. Pollard,* 800 F.2d 223 (10th Cir. 1986); *see also* Wright & Miller, § 4416 at 137–38. In addition to these requirements, courts have recognized a general exception to issue preclusion "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. United States,* 440 U.S. 147, 164 & n. 11, 99 S.Ct. 970, 979 & n. 11, 59 L.Ed.2d 210 (1979); *see also* Wright & Miller, §§ 4423, 4461 at 138.

Based on these factors, defendants are precluded from relitigating the Virginia court's determination that defendants conspired to interfere with plaintiffs' constitutional rights in violation of 42 U.S.C. § 1985(3). Defendants are also precluded from relitigating the factual issues determined by the Virginia court relating to defendants' violations of local law.[2] Preclusion in this action is justified because: (1) the issues are the same; (2) the issues were actually decided by the Virginia court after a full and fair opportunity to litigate; (3) the determinations were necessary for the decision; (4) the parties are substantially the same; (5) the estoppel effect of the

---

**2.** The Virginia court's ruling applied to defendants Operation Rescue, Randall Terry, Patrick Mahoney, Clifford Gannett, Michael McMonagle, Michael Bray, and Jayne Bray. The Virginia court dismissed as defendants Project Rescue, D.C. Project, and Veterans' Campaign for Life because the evidence showed that "none is a legal entity capable of being sued; rather they are names of events organized and coordinated by Operation Rescue for the purpose of conducting 'rescues' at abortion facilities in the Washington Metropolitan Area." *Virginia Findings,* 726 F.Supp. at 1487–88. As the Virginia court's findings do not apply to these defendants, *i.e.,* the court did not find that these defendants

violated plaintiffs' rights, they are not subject to issue preclusion and, therefore, will not be included in the permanent injunction in this case. Conversely, defendant Michael Bray was not included in the preliminary injunction in this case because plaintiffs had not presented sufficient evidence that he had participated in defendants' activities. The Virginia court, however, specifically found that "Michael Bray ha[s] assisted Operation Rescue in the organization and coordination of the District of Columbia Project and Project Rescue." *Id.* at 9. Accordingly, the permanent injunction in this case will enjoin Michael Bray.

Virginia court's determination was foreseeable; and (6) no reason exists to doubt the quality, extensiveness, or fairness of the Virginia litigation. Each of these factors will be considered in turn.

1. The first requirement for issue preclusion is that the issues presented in the two actions be the same. In this case, plaintiffs' right to travel claim under § 1985(3) is identical to the right to travel claim in the Virginia litigation. *See, e.g.,* Affidavit of Wayne C. Codding in Support of Application for a Preliminary Injunction at ¶ 9 (Capitol Women's Center in D.C. has 20% of its patients from Virginia, 15% from Maryland). Moreover, the law applied by the Virginia court is identical to the law that would be applied in this district. The only unsettled question of law relating to plaintiffs' § 1985(3) claim is whether defendants' actions directed against women satisfy the requirement of a "class-based discriminatory animus." The Virginia court held that women are a protected class under § 1985(3), and that, as a subset of that class, women seeking abortions are protected by § 1985(3). Although this circuit has not yet addressed the question, a majority of courts have held that sex-based animus is sufficient to make out a § 1985(3) violation. *See, e.g., New York State NOW v. Terry,* 886 F.2d 1339, 1358–59 (2d Cir.1989); *Volk v. Coler,* 845 F.2d 1422, 1434 (7th Cir.1988); *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 712 F.Supp. 165, 169 (D.Or.1989); *Roe v. Operation Rescue,* 710 F.Supp. 577, 581 (E.D.Pa.1989). *But see Roe v. Abortion Abolition Society,* 811 F.2d 931 (5th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987); *National Abortion Federation v. Operation Rescue,* 721 F.Supp. 1168 (C.D.Cal.1989). A compelling articulation of this holding was given by the Second Circuit:

> Distinctions based upon immutable characteristics such as sex have long been considered invidiously discriminatory. By its very language § 1985(3) is necessarily tied to evolving notions of equality and citizenship. As conspiracies directed against women are inherently invidious, and repugnant to the notion of equality of rights for all citizens, they are therefore encompassed by the Act.... It is ... untenable to believe that Congress would provide a statutory remedy against private conspiracies, the purpose of which is to deny rights common to every citizen, and exclude women as a class from the shelter of its protection.

*New York State NOW,* 886 F.2d at 1359. For these reasons, and for the reasons stated by the Virginia court, a conspiracy to deprive women seeking abortions of their constitutionally protected right to travel is actionable under § 1985(3).

Plaintiffs' claims under District of Columbia law are also substantially identical to the prior issues presented by plaintiffs' claims under Virginia law. First, the Virginia and District of Columbia trespass statutes prohibit identical conduct under identical standards. *Compare* Va.Code Ann. § 18.2–119 (1989) ("If any person without authority of law goes upon or remains upon the lands, buildings or premises of another ... after having been forbidden to do so ... by the owner, lessee, custodian or other person lawfully in charge thereof, ... he shall be guilty of a Class 1 misdemeanor") *with* D.C.Code Ann. § 22–3102 (1989) ("Any person who, without lawful authority, shall enter ... any public or private dwelling, building or other property ... against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor"). The facts determined by the Virginia court establish that defendants' action in this District have violated the District of Columbia's law against trespass. *See Virginia Findings,* 726 F.Supp. at 1488–90.

In addition, the facts determined by the Virginia court establish that defendants' actions constitute a public nuisance under District of Columbia law. The standards for public nuisance in Virginia and the District of Columbia are substantially similar. *Compare Virginia Findings,* 726 F.Supp. at 1495, *with B & W Management, Inc. v.*

*Tasea Investment Co.*, 451 A.2d 879, 881 (D.C.1982) (citing Restatement (Second) of Torts § 821B(1) (1979); W. Prosser, Handbook of the Law of Torts 583 (4th ed. 1971)). The Virginia court found that defendants' actions created a public nuisance by "trespassing on to a clinic's property for the purpose of blocking ingress into and egress from the property, and by hindering use of the parking lots and adjacent streets." *Virginia Findings*, 726 F.Supp. at 1495. Those actions, some of which were committed in this district, constitute a public nuisance under District of Columbia law.

■ 2. The second requirement for issue preclusion is that the issue must have been actually decided after the parties have been given a full and fair opportunity to litigate them. There can be no dispute that the Virginia court actually decided the three alternative holdings. However, defendants argue that, because the trial was accelerated pursuant to Rule 65(a)(2), they were denied a full and fair opportunity to litigate. This argument is without merit. For one, although defendants assert that the Virginia court accelerated the trial *sua sponte*, the opinion states that the trial was accelerated with the parties' consent. *See id.* at 1486. Defendants hypothesize that the Virginia court "may have been deprived of testimony rebutting Plaintiffs' evidence," because defendants did not have sufficient time to conduct discovery or to consult with their clients. *See* Plaintiff's Opposition at 6. However, defendants neither objected to the accelerated trial nor requested any continuance to prepare rebuttal evidence. In consenting to the accelerated trial, defendants presumably knew, or should have known, of its potentially preclusive effect, as this litigation was already pending. Moreover, a Rule 65(a)(2) accelerated trial is a routine procedure designed to preserve judicial resources and save the parties from wasteful duplication of effort. Denying preclusive effect to a valid and final judgment made after a Rule 65(a)(2) trial would contravene the policies underlying both Rule 65(a)(2) and the doctrine of issue preclusion.

■ 3. The third requirement for issue preclusion is that the prior determination must have been necessary to support the judgment. The Virginia court's judgment rested on three independent and alternative grounds. Courts and commentators are divided over the question of what preclusive effect attaches to an alternative holding, and the issue has yet to be resolved in this circuit. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1193–94 & nn. 9 & 10 (D.C.Cir. 1983). It is not necessary to resolve the issue here, however, as all three alternative holdings of the Virginia court are entitled to preclusive effect in this litigation. Because the Virginia court's alternative determinations are adopted in their entirety as alternative holdings in this judgment, defendants do not face the risk that this judgment will be based on a determination not addressed by an appellate court. *See* Wright & Miller § 4421 at 205 (stating that the purpose of the limitation is to prevent a litigant from being bound when "the appellate choice of grounds for decision has made unavailable appellate review of the alternative grounds").

4. The fourth requirement for issue preclusion—that the parties be substantially the same—is easily satisfied. With the exception of five Virginia clinics added to the complaint in the Virginia proceeding, the parties in this proceeding and in the Virginia proceeding are identical.

■ 5. As to the fifth requirement— foreseeability—defendants have posited no reason why the preclusive effect of the Virginia litigation was not foreseeable to defendants or their counsel: this litigation was already pending; the parties were the same; the complaints in the two actions were nearly identical; and defendants were represented by the same counsel. In fact, plaintiffs instituted the Virginia action after this Court refused to take cognizance of plaintiffs' claims relating to defendant's threatened activity in the Maryland and Virginia suburbs of Washington.

■ 6. The final requirement for issue preclusion is that there be no reason "to doubt the quality, extensiveness, or fairness of procedures followed in prior

litigation." *Montana v. United States,* 440 U.S. at 164 & n. 11, 99 S.Ct. at 979 & n. 11. Defendants argue that the "trial testimony of all of Plaintiffs' witnesses was pockmarked with failures to identify specific Defendants or to show that particular Defendants had adopted and ratified any allegedly unlawful conduct of other Defendants." Defendants' Opposition at 8. Defendants' argument, however, amounts to an assertion that the Virginia court's determination is not supported by the weight of the evidence. Issue preclusion, however, is designed to prevent a second court from reweighing the evidence that formed the basis for the first court's judgment. For this reason, the Restatement Second of Judgments cautioned that "a refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous." Restatement (Second) of Judgments § 28 comment j (1982). Defendants have not made any compelling showing of unfairness.

■■■■■ Defendants present one further argument in opposition to plaintiffs' assertion of issue preclusion: defendants claim that, if issue preclusion applies, plaintiffs are bound by a prior determination by a federal court in the Central District of California. *See National Abortion Federation v. Operation Rescue,* 721 F.Supp. 1168 Memorandum Order on Motion To Dismiss (September 14, 1989) (concluding "that women seeking abortions is not a class intended to be protected" by § 1985(3)). Defendants' argument is misplaced. For one, the parties in this litigation and in the California litigation are not the same—only the National Abortion Federation and Operation Rescue appear on both complaints. Moreover, plaintiffs seek to extract an isolated principle of law from a case involving a different set of facts. Issue preclusion does not apply to unmixed questions of law. *See Montana v. United States,* 440 U.S. at 162–63, 99 S.Ct. at 978 ("Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different

demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases."). Finally, even if some preclusive effect could attach to the California litigation, the Virginia litigation arises out of the same set of facts as the present litigation, and therefore is controlling.

## IV.

Defendants raise two final arguments in opposition to plaintiffs' motion for summary judgment. Defendants claim that their actions in blockading plaintiff clinics are protected by their constitutional right of association and the common law doctrine of justification. Both arguments are meritless.

### A.

■■■ Defendants correctly assert that the first amendment right of association protects "peaceable assembly for lawful discussion." *See DeJonge v. Oregon,* 299 U.S. 353, 365, 57 S.Ct. 255, 260, 81 L.Ed. 278 (1937). In this case, however, the only conduct enjoined is the illegal and tortious acts of "trespassing on, blockading, impeding or obstructing access to or egress from" plaintiffs' premises. Such conduct is not protected by the first amendment. *See Virginia Findings,* 726 F.Supp. at 1496 n. 15; *New York State NOW v. Terry,* 886 F.2d at 1364; *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 859 F.2d 681, 687 (9th Cir.1988).

### B.

■■■ Finally, defendants claim that the common law doctrine of justification excuses their conduct. Defendants argue that they reasonably believe that "abortion kills human beings" and that, in preventing women from obtaining abortions, defendants were therefore acting to prevent a greater harm. *See* Defendants' Opposition at 34. The flaw in defendants' argument is that the "harm" they were seeking to prevent is a constitutionally protected activity. A legal abortion does not create a cognizable injury, and, in the absence of injury,

defendants' unlawful conduct cannot be justified. The overwhelming weight of authority supports the conclusion that, given the present state of constitutional law, the justification defense is inapplicable to unlawful attempts to prevent abortions. *See, e.g., Northeast Women's Center v. McMonagle,* 868 F.2d 1342, 1352 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989) (defendant "could not demonstrate that he was faced with a clear and readily apparent harm, because the law does not recognize abortions as a harm"); *Missouri v. O'Brien,* 784 S.W.2d 187, 192 (Mo.App.1989) ("the defense of necessity ... cannot be utilized when the harm sought to by avoided (abortion) remains a constitutionally protected activity and the harm incurred (trespass) is in violation of the law").

## V.

Plaintiffs are entitled to summary judgment as a matter of law because no material factual disputes remain. Based on principles of issue preclusion, the findings and conclusions of the Virginia court establish that defendants have conspired in violation of 42 U.S.C. § 1985(3) to interfere with plaintiffs' constitutionally protected right to travel. The Virginia court's findings also establish that defendants have engaged in conduct in this district that violates the District of Columbia law against trespass and the common law prohibition of public nuisance. Finally, defendants' actions are neither protected by the first amendment nor excused by the common law defense of justification.

As plaintiffs have succeeded on the merits of their claim, they are entitled to injunctive relief if they have no adequate remedy at law and if they are favored by the balance of equities. *See Virginia Findings,* 726 F.Supp. at 1496; *New York State NOW v. Terry,* 704 F.Supp. 1247, 1262 (S.D.N.Y.1989). Plaintiffs satisfy both these criteria. First, plaintiffs have no adequate remedy at law because defendants' blockades pose the threat of irreparable physical and emotional injury to plaintiffs' patients and members. *See Virginia Findings,* 726 F.Supp. at 1496; *New*

*York State NOW,* 704 F.Supp at 1262. Moreover, the illegality of the enjoined conduct does not protect plaintiffs as local police are unable to prevent blockades. *See Virginia Findings,* 726 F.Supp. at 1489 & n. 4 ("Limited police department resources combined with the typical absence of any advance notice identifying a target clinic renders it difficult for local police to prevent rescuers from closing a facility for some period of time."); *NOW v. Operation Rescue,* 726 F.Supp. at 303 (stating a Metropolitan Police Officer's opinion that "neither arrest nor the threat of arrest and conviction deterred Operation Rescue blockades"). Second, the balance of equities clearly falls to plaintiffs: defendants' activities are illegal and interfere with plaintiffs' exercise of constitutionally protected rights. *See Virginia Findings,* 726 F.Supp. at 1496; *New York State NOW,* 704 F.Supp at 1262. Finally, the permanent injunction issued in this case is narrowly tailored to enjoin only unlawful blockades. The injunction does not infringe upon any of defendants' expressive rights.

Accordingly, an accompanying order will vacate the order entered January 20, 1990 and issue a revised order designed to enjoin defendants from further interference with plaintiffs' rights as defined herein. In addition, for reasons stated in a separate Memorandum issued this date in relation to contempt proceedings in this matter, the revised injunction will enjoin Joseph Foreman and Susan Odom, will prohibit defendants from "aiding or abetting" others to violate the injunction, and to facilitate obedience to this permanent injunction, will establish sanctions for future violations of the injunction by particular organizations and individuals.

## REVISED PERMANENT INJUNCTION

For the reasons stated in the accompanying Memorandum, the Court has found that defendants, and those acting in concert with them, have violated 42 U.S.C. § 1985(3), as well as District of Columbia laws relating to trespass and public nuisance, that such violations are likely to

recur, that plaintiffs suffer irreparable injury as a result of these violations, and that no adequate remedy exists at law bar these violations or to compel future compliance by defendants and others with notice of this Permanent Injunction. Accordingly, it is this 30th day of July, 1990, hereby

ORDERED: that the Permanent Injunction filed January 26, 1990 is VACATED; and it is further

ORDERED: that plaintiffs' Cross–Motion for Summary Judgment is GRANTED; and it is further

ORDERED: that defendants' Motion to Dismiss is DENIED; and it is further

ORDERED: that final judgement be entered in favor of plaintiffs and against defendant; and it is further

ORDERED, ADJUDGED, and DECREED: that Operation Rescue, Randall Terry, Patrick Mahoney, Clifford Gannett, Jayne Bray, Michael Bray, Michael McMonagle, Joseph Foreman, Susan Odom, and persons acting in concert with them are enjoined and restrained from in any manner, or by any means, trespassing on, blockading, impeding or obstructing access to or egress from the following premises: Capital Women's Center, 1339 22nd Street, N.W., Washington, D.C.; Hillcrest Women's Surgi–Center, 7603 Georgia Avenue, N.W., Washington, D.C.; Planned Parenthood Clinic, 1701 Q Street, N.W., Washington, D.C.; New Summit Medical Center, 2112 F Street, N.W., Washington, D.C.; Washington Surgi–Clinic, 1018 22nd Street, N.W., Washington, D.C.; Washington Hospital Center, 110 Irving Street, N.W., Washington, D.C.; Hillcrest Women's Surgi–Center, 3233 Pennsylvania Avenue, S.E., Washington, D.C.; Planned Parenthood of Metropolitan Washington, D.C., Inc., 1108 16th Street, N.W., Washington, D.C.; Planned Parenthood of Metropolitan Washington, D.C., Inc., 2811 Pennsylvania Avenue, S.E., Washington, D.C.; and it is further

ORDERED, ADJUDGED, and DECREED: that Operation Rescue, Randall Terry, Patrick Mahoney, Clifford Gannett, Jayne Bray, Michael Bray, Michael McMonagle, Joseph Foreman, Susan Odom and persons acting in concert with them are enjoined and restrained from in any manner, or by any means, trespassing on, blockading, impeding or obstructing access to or egress from any facility at which abortions, family planning, or gynecological services are performed in the District of Columbia; and it is further

ORDERED: that Operation Rescue, Randall Terry, Patrick Mahoney, Clifford Gannett, Jayne Bray, Michael Bray, Michael McMonagle, Joseph Foreman, Susan Odom and persons acting in concert with them are enjoined and restrained from inducing, encouraging, directing, aiding, or abetting others in any manner, or by any means, to trespass on, to blockade, or to impede or obstruct access to or egress from any facility at which abortions, family planning, or gynecological services are performed in the District of Columbia; and it is further

ORDERED: that a $50,000 contempt sanction will be imposed upon Operation Rescue in the event that it violates this injunction, such fine to be paid to the medical facility or facilities that are or become the target of the violation; and it is further

ORDERED: that a $5,000 contempt sanction will be imposed upon Clifford Gannett, Joseph Foreman, Susan Odom, or Michael McMonagle on the next occasion that such individual violates the injunction, such fine to be paid to the medical facility or facilities that are or become the target of the violation and the sanction to be imposed for each succeeding violation by any one of the foregoing named individuals will be double the sanction imposed on account of its predecessor violation; and it is further

ORDERED: that that a $2,500 contempt sanction will be imposed upon Patrick Mahoney on the next occasion that he violates this injunction, such fine to be paid to the medical facility or facilities that were the target of the violation and the sanction to be imposed for each succeeding violation by Patrick Mahoney will be tripled on account of its predecessor violation; and it is further

DECLARED: that this PERMANENT INJUNCTION is in aid, and not in derogation, of the authority and responsibility of the United States, the District of Columbia, and their respective law enforcement agencies with respect to enforcement of relevant federal and District of Columbia laws; and it is further

ORDERED: that the United States Marshal for the District of Columbia shall serve this injunction or cause it to be served on each of the named defendants; and it is further

ORDERED: that plaintiffs may post this Order at their premises and cause it to be published at their expense.