NATIONAL ORGANIZATION FOR WOMEN, et al., Plaintiffs,

v.

OPERATION RESCUE, et al., Defendants.

Civil Action No. 89–2968–LFO.

United States District Court, District of Columbia.

May 30, 1996.

D. Jean Veta, Rene I. Augustine, Rebecca S. Campbell, Eric Lasker, Covington & Burling, Washington, DC, for Plaintiffs.

Colby M. May, Jay Alan Sekulow *, James M. Henderson, Sr.*, Washington, DC, for Defendants Randall Terry, Jayne & Michael Bray, Michael McMonagle, Operation Rescue.

## MEMORANDUM

OBERDORFER, District Judge.

In its decision of October 18, 1994, the Court of Appeals affirmed the conclusion that defendants violated this Court's injunction to the detriment of plaintiffs, but remanded this matter for further consideration of the nature of the fines that had been imposed for violation of the injunction in this case. *See NOW v. Operation Rescue,* 37 F.3d 646, 661 (D.C.Cir.1994). Although the Court of Appeals held that several fines were criminal

---

* Admitted pro hac vice.

and therefore subject to additional procedural safeguards, those fines imposed that were "explicitly compensatory in nature" and per diem fines for failure to appear were upheld as civil fines. *Id.* at 658, 662–63.

Plaintiffs argue that an award of attorneys' fees is an appropriate compensatory fine in this case. *See* Pls.' Pretrial Statement at 21 (citing *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978) and *NOW v. Operation Rescue,* 747 F.Supp. 772, 774 (D.D.C.1990)); *see also* Pls.' Mot. for Adoption of Purge Provision at 5 n. 7. Plaintiffs represent that federal law permits courts to award attorneys' fees in contempt proceedings. *See Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978). At oral argument on October 10, 1995, counsel for plaintiffs also cited District of Columbia cases that support plaintiffs' position. The District of Columbia Court of Appeals recently held that:

> "[A] party compelled to resort to a civil contempt proceeding to preserve and enforce an adjudicated right is entitled to a decree by way of a fine for injuries actually sustained by [her] because of the contemptuous act ... which [decree] may include, in the discretion of the court, an award of attorney's fees."

*Link v. District of Columbia,* 650 A.2d 929, 931 (D.C.1994) (quoting *In re Federal Facilities Realty Trust,* 227 F.2d 657, 658 (7th Cir.1955)); *see also Kelly v. Parents United for the Dist. of Columbia Public Sch.,* 641 A.2d 159, 169 (D.C.1994), *amended on reh'g in part,* 648 A.2d 675 (D.C.1994).

■ Clifford Gannett, a defendant in this case, counters that a fee award would not be appropriate because the Court of Appeals has already held that plaintiffs are not entitled to attorneys' fees. *See* Gannett's Resp. to Pls.' Pretrial Statement at 8–9 (citing *NOW v. Operation Rescue,* 37 F.3d at 654). It is true that the Court of Appeals vacated this Court's January 4, 1991 Order awarding attorneys' fees, based on the fact that "the essential predicate for an award of attorneys' fees under [42 U.S.C.] § 1988 [that is, a successful § 1985 claim] no longer exists." *NOW v. Operation Rescue,* 37 F.3d at 653.

However, the court did not rely upon § 1988 for the exercise of the jurisdiction which culminated in the injunction and contempt citation. They were imposed in an exercise of pendent jurisdiction over plaintiffs' local law claim, which jurisdiction was confirmed by our Court of Appeals. Thus, plaintiffs do not base their attorneys' fees request on § 1988; as plaintiffs correctly argue, "fees can also be awarded as part of a civil contempt penalty." *Hutto,* 437 U.S. at 689 n. 14, 98 S.Ct. at 2572 n. 14. Plaintiffs' assertion of a local law claim is also supported by District of Columbia precedent. *See Link,* 650 A.2d at 931. An award of attorneys' fees satisfies the Court of Appeals' directive that "it is incumbent upon the district court to make an express determination as to the existence, nature, and extent of any ... compensable damages, and to tailor compensatory civil fines accordingly." *NOW v. Operation Rescue,* 37 F.3d at 661. Awarding attorneys' fees and costs is therefore appropriate in this case.

■ Plaintiffs represent that although they were awarded attorneys' fees on February 27, 1991, in connection with the first round of contempt proceedings, they have not yet been awarded attorneys' fees in connection with the contempt proceedings regarding the January and April 1992 blockades. Plaintiffs request $37,190 in fees and $227.80 in costs, and they have filed an affidavit and exhibits supporting their calculations. *See* Decl. of D. Jean Veta. Moreover, plaintiffs represent that the billing rates requested are the customary billing rates for the attorneys involved, although the highest billing rate has been capped at $200 per hour, and that these rates are consistent with prevailing market standards. *See* Pls.' Pretrial Statement at 22–23; *see also Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1522–24 (D.C.Cir.1988) (en banc). Defendants have not disputed plaintiffs' calculations, and plaintiffs are entitled to the amount they have requested.

Although those fines imposed that were "explicitly compensatory in nature" and per diem fines for failure to appear were determined to be civil, the Court of Appeals held that several other fines are criminal and

therefore subject to additional procedural safeguards, based on the Supreme Court's decision in *International Union v. Bagwell,* — U.S. ——, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). The U.S. Attorney has indicated, by letter dated June 5, 1995, that the U.S. Attorney's Office "will not pursue further potential violations of the Court's injunction occurring prior to May 11, 1995." Letter of Eric Holder, Jr., dated June 5, 1995, at 1. The U.S. Attorney cited as reasons, *inter alia,* "statute of limitations considerations." *Id.* at 2. Pursuant to an October 11, 1995 Order, defendants filed a motion to quash as time-barred criminal contempt prosecutions for acts, allegedly in violation of the injunction in this case, that occurred before May 11, 1995.

 Defendants argue that 18 U.S.C. § 402 governs any criminal prosecutions in this case. Section 402 provides:

> Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by a fine under this title or imprisonment, or both.

According to defendants, § 402 is the applicable statute because several of the actions complained of were held to violate local statutes against incommoding: "plaintiffs have conceded that several of the defendants were in fact arrested and charged with incommoding and that they then paid the find [sic] for such charge." Defs.' Mot. to Quash at 4. The statute of limitations for actions under § 402 is one year:

> No proceeding for criminal contempt within section 402 of this title shall be instituted against any person, corporation or association unless begun within one year from the date of the act complained of; nor shall any such proceeding be a bar to any criminal prosecution for the same act.

18 U.S.C. § 3285. Defendants therefore argue that § 3285 bars any criminal prosecution for contempt of court for actions that occurred more than one year before the initiation of the prosecution. According to defendants, "[s]ince there is no allegation that any violation of the Injunction has occurred within the past year," the motion to quash should be granted. Defs.' Mot. to Quash at 5–6.

Plaintiffs argue that the applicable statute is instead 18 U.S.C. § 401, which does not have any statute of limitations. Section 401(3) permits federal courts "to punish by fine or imprisonment, at its discretion, such contempts of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." Plaintiffs cite a recent case in which a district court appointed an independent counsel to prosecute charges of criminal contempt under § 401(3) against one of the defendants in this case, Randall Terry. *See United States v. Terry,* 17 F.3d 575 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994). Plaintiffs cite other cases affirming criminal contempt convictions under that section for activities in violation of court injunctions. *See United States v. Cunningham,* 599 F.2d 120 (6th Cir.1979); *United States v. Eichhorst,* 544 F.2d 1383 (7th Cir.1976); *United States v. Partin,* 524 F.2d 992 (5th Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976). Relying on these cases, plaintiffs argue that "this Court would not be time barred from requesting a section 401(3) criminal contempt prosecution for defendants' contumacious conduct in connection with the repeated blockades of family planning clinics in the District in 1992 and 1993." Pls.' Opp'n at 1.

According to defendants, however, since § 402 expressly provides for criminal contempt proceedings where the action also violates a statute, then the provisions of § 402 (and, implicitly, § 3285) are applicable where there is a state or federal criminal offense alleged. *See* Defs.' Mot. to Quash at 5 (citing *United States v. Pyle,* 518 F.Supp. 139, 146 (E.D.Pa.1981) ("[W]here a person is charged with criminal contempt only under § 401, but in fact the contempt charged consists of conduct which *also* violates state or federal crim-

inal law, the provisions of §§ 402 and 3691 [providing jury trial under § 402] automatically come into play."), aff'd, 722 F.2d 736 (3d Cir.1983) (Table)). In *Pyle*, the court held that the alleged contemnors could not be denied a jury trial, expressly provided in cases brought under § 402, by charging them only under § 401. Otherwise, the government could avoid the protection of a jury trial simply by charging alleged contemnors with violating only § 401. See *Pyle*, 518 F.Supp. at 146.

Plaintiffs counter that § 402 is inapplicable unless the contumacious actor is also *charged* with a criminal offense against the United States or the state. Pls.' Opp'n at 9 (citing *Richmond Black Police Officers v. City of Richmond*, 548 F.2d 123, 127 n. 3 (4th Cir. 1977) ("[N]o offense against the United States or against a state was charged, and therefore 18 U.S.C. § 3691 [and therefore § 402] is inapplicable.")). Moreover, according to plaintiffs, "the mere possibility of a separate criminal prosecution does not preclude a Court from pursuing criminal contempt charges under section 401(3)." *Id.* at 10. Plaintiffs point out that defendants would be prosecuted under § 401(3) for "such otherwise non-criminal conduct as inciting, directing, and aiding and abetting others to blockade the District's family planning clinics." *Id.* at 2.

■ Even assuming *arguendo* that plaintiffs are correct in their assertion that § 401(3) may be applied to this case, the question remains whether it would be appropriate at this time to institute criminal contempt prosecutions for conduct that occurred in 1992 and 1993. The cases cited by plaintiffs do not concern the statute of limitations issue arising in this case, where plaintiffs seek to have this Court appoint an independent counsel to prosecute defendants for blockading family planning clinics over two years ago. Addressing the severity of sentences imposed for contempts, the Supreme Court has held that "where Congress has not seen fit to impose limitations on the sentencing power for contempts the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection. The 'discretion' to punish vested in the District Courts by § 401 is not an unbridled discre-

tion." *Green v. United States*, 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958). A similar analysis may apply with respect to the lack of a statute of limitations for violations of § 401.

Plaintiffs correctly state that § 401 authorizes criminal contempt prosecutions for the violation of an injunction, even if there is no violation of a criminal statute. However, the injunction issued in this case was directed primarily at defendants' purportedly illegal activities during the blockades. That injunction was aimed at remedying a situation in which defendants were alleged to have been in flagrant violation of local law. This Court has repeatedly emphasized the illegal nature of defendants' actions: "the only conduct enjoined is the illegal and tortious acts of 'trespassing on, blockading, impeding or obstructing access to or egress from' plaintiff's premises." *NOW v. Operation Rescue*, 747 F.Supp. 760, 769 (D.D.C.1990); see also *id.* at 770 ("The Virginia court's findings also establish that defendants have engaged in conduct in this district that violates the District of Columbia law against trespass and the common law prohibition of public nuisance."); *id.* ("The illegality of the enjoined conduct does not protect plaintiffs as local police are unable to prevent blockades."); *id.* ("[T]he permanent injunction in this case is narrowly tailored to enjoin only unlawful blockades.").

Thus, even if plaintiffs' argument—that defendants must have been *charged* with criminal acts for § 402 to apply to this case—is correct, I decline to institute criminal contempt proceedings, based on the statute-of-limitations provisions applicable to § 402 prosecutions. The injunction in this case was squarely addressed to the problem of defendants' allegedly criminal acts. That problem apparently no longer exists, as there is no evidence in the record of further contumacious acts since the 1993 blockades. In light of these circumstances, it is appropriate to consider the statute of limitations mandated by § 3285 with respect to § 402, even though § 401 technically may be available as a means of instituting criminal contempt proceedings. That statute of limitations would bar the criminal contempt prosecutions contemplated by plaintiffs.

It is also important to note that while the primary concern of this Court throughout

these proceedings has been defendants' allegedly criminal acts, the intended purpose of the injunction was, from the beginning, to provide an effective civil coercive sanction rather than a criminal or punitive sanction. Throughout the course of this litigation, I have stated that "[t]hese proceedings ... are civil in nature" rather than criminal or punitive. *NOW v. Operation Rescue,* 747 F.Supp. at 774. Although the Court of Appeals held that certain fines imposed for violation of the injunction are criminal in nature and therefore require criminal procedural protections, instituting criminal prosecutions at this time would run counter to my express intention to create a civil coercive remedy rather than a criminal remedy for violations of the injunction in this case.[1] Moreover, the objective of the original injunction apparently has been accomplished, and the possibility of future violations has been further reduced by the recent enactment of a federal law that provides a criminal sanction enforceable by the Department of Justice and the United States Attorney for interference with access to reproductive health services. *See* Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248. In light of all these circumstances, criminal contempt prosecutions for contumacious acts occurring before May 11, 1995, are inappropriate. An accompanying Order therefore will grant defendants' motion to quash criminal contempt prosecutions for any such acts.

▆▆▆ Questions remain with respect to the schedule of fines established by the Order of July 31, 1990 and provision for an opportunity of a defendant to purge the imposition of a fine imposed for non-compliance. Defendants invite attention to the principle that " 'in selecting contempt sanctions, a court is obliged to use the least possible power adequate to the end proposed.' "

---

1. In its decision, the Court of Appeals noted that "while continuing to characterize these fines as civil contempt sanctions, the district court itself at times has recognized their punitive elements." *NOW v. Operation Rescue,* 37 F.3d at 661. To illustrate this conclusion, the Court of Appeals quoted my statement that "the compulsion in this case is imposed as a punishment for unlawful activity." That statement appears in a memorandum opinion that addresses the First Amendment implications of the injunction. *NOW v.*

Defs.' Resp. in Opp'n to Pls.' Mot. for Adoption of Purge Provision at 2 n. 2 (quoting *Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 632–33, 107 L.Ed.2d 644 (1990) (citations and internal quotation marks omitted)). The passage of time, without further violation, and Congress' creation of a federal criminal sanction persuade me that not only the schedule of fines but also the entire injunction has served its original purpose. It is noteworthy that the District Court for the Eastern District of Virginia dissolved the injunction which it issued in the bellwether case in this metropolitan area. *See* Defs.' Resp. to Order to Show Cause at 4 n. 1 (citing *NOW v. Operation Rescue,* No. 89–1558–A (E.D.Va.)). Finally, old inactive injunctions, having served their original purpose, can lose their focus and become "more trouble than they are worth." It must be presumed that any future conduct such as that which requires the courts in this area to intervene, will now be dealt with by the Department of Justice under federal law, making any further exercise of pendent jurisdiction unnecessary and inappropriate. Accordingly, the accompanying Order directs the entry of judgment against the defendants, separately and severally, for plaintiffs' attorneys' fees and costs in the amount of $37,417.80, quashes the non-compensatory contempt prosecutions, and dissolves prospectively the permanent injunction entered on July 30, 1990 as amended on September 25, 1990, January 16, 1992, and March 16, 1993.

This disposition of the matter renders unnecessary further consideration of the possible purge provisions of an injunction.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 29th day of May, 1996, hereby

---

*Operation Rescue,* Civil Action No. 89–2968, Mem. Op. at 9 (D.D.C. July 29, 1993). It is therefore of questionable relevance to the question of whether the purpose of the injunction was to impose criminal, rather than coercive civil, penalties. Nevertheless, to the extent that that isolated statement suggests a willingness to impose a criminal sanction in this case, it does not reflect my considered intention to impose only civil penalties.

ORDERED: that plaintiffs' request for attorneys' fees and costs should be and is hereby GRANTED; and it is further

ORDERED: that the Clerk of Court shall enter JUDGMENT in the amount of $37,-417.80 to compensate for expenses incurred by plaintiffs with respect to the civil contempt proceedings in this case; and it is further

ORDERED: that defendants' motion to quash non-compensatory contempt prosecutions should be and is hereby GRANTED; and it is further

ORDERED: that non-compensatory contempt prosecutions for acts, allegedly in violation of the injunction in this case, that occurred before May 11, 1995, should be and are hereby QUASHED; and it is further

ORDERED: that the injunction entered on July 30, 1990 as amended on September 25, 1990, January 16, 1992, and March 16, 1993 should be and is hereby TERMINATED prospectively.