**FREEMAN and BASS, P.A., et al.,**
**Plaintiffs,**

v.

**STATE OF NEW JERSEY COMMISSION**
**OF INVESTIGATION et al.,**
**Defendants.**

Civ. A. No. 202-73.

United States District Court,
D. New Jersey.

April 6, 1973.

Supplemental Opinion June 6, 1973.

firm, and by Samuel Bass and Samuel Freeman individually as plaintiffs against the New Jersey State Commission of Investigation (hereafter SCI), and John F. McCarthy, Jr., Charles L. Bertini, Wilfred P. Diana, Ronald S. Diana, Ronald Heymann, Charles Rosen, and Martin G. Holleran individually. This written opinion incorporates the substance of an oral opinion delivered from the bench on February 26, 1973 on plaintiffs' application for a temporary restraining order pending a hearing for a preliminary injunction to enjoin defendants from:

 (1) further investigating plaintiffs' professional and personal activities;

 (2) further investigating, intimidating, or interviewing plaintiffs' clients, employees and agents;

 (3) enforcing all outstanding subpoenas.[1]

■■ Plaintiffs allege in their verified complaint that this court has jurisdiction by virtue of 42 U.S.C. §§ 1982, 1983 and 1985. 42 U.S.C. § 1982 deals with the right to convey personal and real property, and I do not see any relevance of this particular section to the claim asserted by plaintiffs. Sections 1983 and 1985 create federal causes of action for the deprivation under color of state law of the constitutional rights of citizens. By themselves, these sections are not jurisdiction conferring; they are cognizable as actions in federal court only by virtue of 28 U.S.C. §§ 1343(3) and (4), Howell v. Cataldi, 464 F.2d 272 (3d Cir. 1972).

The complaint alleges that the SCI through its commissioners (Wilfred P. Diana, John F. McCarthy, Jr. and Charles L. Bertini), its Executive Director (Martin G. Holleran), and its special counsel (Ronald S. Diana) has carried on an investigation of plaintiffs instigated at the behest of and in conspiracy with the Commissioner of the State De-

Roger A. Lowenstein, Newark, N. J., Lewis M. Steel, New York City, for plaintiffs.

Martin G. Holleran, State Comm. of Investigation, Newark, N. J., Ronald S. Diana, Trenton, N. J., pro se and for State of N. J. Comm. of Investigation, John F. McCarthy, Jr., Charles L. Bertini and Wilfred P. Diana.

George F. Kugler, Jr., Atty. Gen. of N. J., I. Leo Motiuk, Deputy Atty. Gen., Trenton, N. J., for Ronald Heymann and Charles Rosen.

## OPINION

GARTH, District Judge:

The complaint in this action was brought by Freeman & Bass, P.A., a law

---

1. The plaintiffs also seek declaratory relief under 28 U.S.C. § 2201 and 2202, but the propriety of that declaratory relief is not presently before me.

partment of Labor and Industry, Ronald Heymann and his assistant, Charles Rosen, for the purpose of harassing and intimidating plaintiffs because of plaintiffs' "long history of vigorous representation of poor and minority working class clients and their professional involvement in controversial causes." The plaintiffs allege that the aforesaid conduct of defendants violates rights guaranteed by the First, Fourth, Sixth, Ninth, and Fourteenth Amendments, specifically, by depriving plaintiffs of the right to petition for redress of grievances and the right of unimpeded access to legal process and the courts on behalf of their clients; and the right "to advocate unpopular causes, the right to be secure from unreasonable searches, seizures, and interrogations, the right to provide clients with vigorous representation, the right of privacy, and the right to practice the profession of their choice."

Plaintiffs further allege that the investigation was conceived and is being conducted against plaintiffs without standards, guidelines, or regulations, to control and determine its scope, and as such, is overbroad and vague in violation of the constitutional rights of plaintiffs. Specific instances of harassment are then cited that allegedly deprive plaintiffs and their clients of their rights. Plaintiffs point, in particular, to the deprivation of the rights of workmen's compensation clients to be adequately represented by counsel in the prosecution of their claims by virtue of the harassment of plaintiffs.

Two additional counts of the complaint are pendent in nature. I shall defer discussion of them until I determine whether or not I have jurisdiction over the §§ 1983 and 1985 causes of action.

## JURISDICTION

■ Defendants allege in their brief that there is no constitutional right to practice law and that therefore plaintiffs have not stated a cause of action under 42 U.S.C. §§ 1983 or 1985. To be sure there may be no constitutional right as such to "practice law." But in opposing plaintiffs' complaint on these grounds, defendants have entirely ignored the gist of the allegations contained therein, to wit that the SCI investigation is being conducted so as to harass and intimidate plaintiffs for their advocacy of unpopular causes. If proved, these allegations would constitute a violation of plaintiffs' First Amendment rights secured to the plaintiffs from infringement by state action through the Fourteenth Amendment. Plaintiffs thus state a cause of action cognizable under 42 U.S.C. § 1983. Taylor v. Kentucky State Bar Ass'n, 424 F. 2d 478 (6th Cir. 1970).

Plaintiffs also allege a violation of the First Amendment rights of their workmen's compensation clients, an allegation given no recognition in defendants' opposing papers. There can be of course no question that plaintiffs have standing to allege the deprivation of their own rights. But whether or not plaintiffs' clients possess First Amendment rights susceptible to protection, and if so, whether or not plaintiffs have standing to assert these rights on behalf of their clients presents a more delicate issue.

In a series of cases—NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963); Railroad Trainmen v. Virginia Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967), and most recently, United Transportation Union v. State Bar of Michigan, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 33 (1971)—the Supreme Court has decided that associations of working men have the right to hire attorneys and to recommend attorneys to their associates for the purpose of representing these associates in workmen's compensation cases. The court speaks in these cases of an inviolate First Amendment right to be represented by counsel for the advocacy of not only political causes, but also of economic ones. *United Mine Workers, supra,* 389 U.S. at

223, 88 S.Ct. 353. "At issue," says the court, "is the basic right to group legal action, a right first asserted in this Court by an association of Negroes seeking the protection of freedoms guaranteed by the Constitution. The common thread running through our decision in NAACP v. Button, *Trainmen,* and *United Mine Workers,* is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *United Transportation Union, supra,* 401 U.S. at 585, 91 S.Ct. at 1082. Although the cases refer to the associational right to advise others in one's group of differing means of access to the courts, the existence of the associational *group* right necessarily implies a like right for individuals. It would make no sense for an individual's right of access to legal action to cease to exist, or not to come into existence at all, at the moment he ceases to belong to a group. Impositions upon or obstructions of the right of legal access and legal action, such as are alleged in the plaintiffs' complaint, necessarily infringe upon First Amendment guarantees of the individual whether or not the individual asserts those rights through the medium of group action. *See* Note, Advertising, Solicitation, and the Availability of Legal Counsel, 81 Yale L.J. 1181, 1186 (1972).

Plaintiffs' contention that the SCI investigation is deterring its clients from exercising their right of access to legal action by the subpoenaing of confidential attorney client files and by various other means thus alleges a deprivation under color of state law of constitutional rights as would appear to state a cause of action under 42 U.S.C. § 1983 over which the court has jurisdiction by virtue of 28 U.S.C. § 1343(3). Defendants' assertion that plaintiffs' claim constitutes one for infringement of property rights not subject to protection under § 1983 as in National Land & Investment Co. v. Specter, 428 F.2d 91, 98 (3d Cir. 1970) is entirely without merit since the "property-rights" doctrine of that case has been explicitly overruled by the Supreme Court in Lynch v. Household Finance Co., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).[2]

Thus plaintiffs state a good cause of action under both §§ 1983 and 1985, cognizable in the district court by virtue of 28 U.S.C. §§ 1343(3) and (4).[3]

---

2. Previous to *Lynch,* the First and Second Circuits as well as the Third had maintained that the Civil Rights Act of 1871 did not give rise to actions for infringement of "property" as opposed to "personal" constitutional rights. Tichon v. Harder, 438 F.2d 1396 (2d Cir. 1971); Jimmies Inc. v. City of West Haven, 436 F.2d 1339 (2d Cir. 1971); Eisen v. Eastman, 421 F.2d 560 (2d Cir.), cert. denied 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1969); Carter v. Chief of Police, 437 F.2d 413 (3d Cir. 1971). The doctrine adopted in this line of cases, eventually rejected in *Lynch,* took root from Justice Stone's concurring opinion in Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

3. Although not raised by the defendants, a serious question arises as to the propriety of Civil Rights actions against the defendant SCI. The Court of Appeals of this Circuit has held that such a state body is not a "person" in Civil Rights actions for *damages* and therefore not subject to suit thereunder. Via v. Cliff, 470 F.2d 271 (3 Cir. 1972); Howell v. Cataldi, 464 F.2d 272 (3d Cir. 1972); Robinson v. McCorkle, 462 F.2d 111, 114 (3d Cir. 1972); United States ex rel. Gittelmacker v. City of Philadelphia, 413 F.2d 84, 86 (3d Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970). *See also* Ransom v. City of Philadelphia, 311 F. Supp. 973 (D.C.Pa.1970) (Philadelphia is not a "person" under § 1985 as well).

In the Fifth, Seventh and Tenth Circuits, although state bodies are not subject to damages in Civil Rights actions, such bodies can be enjoined from violating the constitutional rights of citizens. Harkless v. Sweeny Independent School Dist., 427 F.2d 319, 322 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969); Dailey v. City of Lawton, 425 F.2d 1037 (10th Cir. 1970). *See also* Steel Hill Development, Inc. v. Town of Sanbornton, 335 F.Supp. 947, 950 (D.

Contrary to the contention of defendants, this court has jurisdiction notwithstanding plaintiffs' possible failure to exhaust their state remedies. Randell v. Newark Housing Authority, 384 F.2d 151 (3d Cir. 1967), cited in oral argument by defendants as authority for the necessity of exhausting state remedies explicitly states to the contrary: "Our decision in this case is not based on the rationale of exhaustion of state remedies, which is not applicable to actions under 42 U.S.C. § 1983." 384 F.2d at 156 n. 11. Canty v. Board of Educ., 332 F.Supp. 1009 (S.D.N.Y.1971), also cited for the exhaustion of remedies doctrine in § 1983 actions, although affirmed by the Second Circuit, 448 F.2d 428, has been vacated by the Supreme Court. 408 U.S. 940, 92 S.Ct. 2874, 33 L.Ed.2d 765 (1972). Moreover, the Supreme Court has continuously held that the exhaustion of remedies doctrine does not apply to § 1983 actions. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Educ., 373 U.S. 668, 670, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).[4]

## STANDING

I have determined that plaintiffs allege a cause of action under 42 U.S.C. §§ 1983 and 1985 by virtue of the infringement of *their clients'* First Amendment rights. A question remains, however, as to whether plaintiffs have standing to assert the constitutional rights of their clients. It is well established that a claimant asserting the violation of a constitutional right of another need not necessarily ground his claim to standing on an allegation that *his* constitutional rights have been infringed. Thus in Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 1679, 14 L.Ed.2d 510 (1965), although the constitutional right infringed was that of those who sought to use contraceptives and not that of doctors seeking to distribute them, doctors appealing their criminal conviction had standing to "raise the constitutional rights of the married people with whom they had a professional relationship." Most recently in Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (U.S. Jan. 22, 1973), the Supreme Court accorded standing to doctors consulted by pregnant women to assert these women's rights[5]

> "despite the fact that the record does not disclose that any one of them [the doctors] has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes."

The fact that "[t]he physician is the one against whom these criminal statutes directly operate in the event he procures an abortion" was sufficient to afford the doctors the requisite adversity of interest in the litigation to assure that they would litigate concrete and not abstract issues of law. United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Cine-

---

N.H.1971). This Circuit seems to have taken a contrary view but without discussion of the authorities in the other Circuits. *See* Educational Equality League v. Tate, 472 F.2d 612 (3 Cir. 1973) (footnote 1); Lehman v. City of Pittsburgh, 474 F.2d 21 (3 Cir. 1973). *See also* Robinson v. McCorkle, 462 F.2d 111, 114 n. 4 (3d Cir. 1972) (acknowledging . the *Harkless* case in the Fifth Circuit). However, in view of the ultimate disposition I make on the merits with respect to the instant application, I need intimate no opinion at this time as to the propriety of injunctive or declaratory relief as against the SCI. Since I might be called upon in a sub-

sequent application to grant relief necessitating a decree involving the SCI itself in order to protect adequately the rights of the plaintiffs, I shall not dismiss the state body at this time.

4. The inapplicability of the exhaustion of remedies doctrine applies equally as well to § 1985 actions. *See* Ransom v. City of Philadelphia, 311 F.Supp. 973 (D.C. Pa.1970); Steel Hill Development, Inc. v. Town of Sanbornton, 335 F.Supp. 947 (D.C.N.H.1971)..

5. The doctors, of course, did not assert that they themselves possessed a constitutional right to perform abortions.

Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D.N.J.1972).

The same issue was presented in Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), in which *Baird* was appealing a conviction for distributing contraceptives on the grounds that the law under which he was convicted violated the constitutional rights of those persons who wished to obtain and use contraceptives. In deciding that *Baird* had standing to raise the constitutional rights of "users", the Supreme Court did not narrow its inquiry to the imminence of a criminal prosecution or to the existence of a professional relationship such as doctor-patient—or as is the case here, attorney-client. Rather the Supreme Court acknowledged that what was critical was "the impact of the litigation on third-party interests." 405 U.S. at 445, 92 S.Ct. at 1034. "Enforcement of the Massachusetts statute," said the Court, "will materially impair the ability of single persons to obtain contraceptives." 405 U.S. at 446, 92 S.Ct. at 1034.

The situation in the case at hand is analogous. Should the defendants be prohibited from asserting the constitutional rights of their clients, the impact on those clients would be great. Their access to legal redress may be seriously impaired or impeded. Moreover, although there is no present threat of criminal prosecution, the actual economic harm that is allegedly resulting from the present SCI investigation to plaintiffs by virtue of their possible loss of clientele and injury to their professional reputation assures the court that they will vigorously prosecute the litigation. *See* Jenkins v. McKeithen, 395 U.S. 411, 423, 424, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Accordingly I find that there exists a sufficient nexus between the plaintiffs and the rights of the clients they seek to assert to afford them standing to assert those rights in this action. *See* Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599 (1962); *see also* NAACP v. Alabama, 357 U.S. 449, 78 S.

Ct. 1163, 2 L.Ed.2d 1488 (1958); Gibson v. Florida Legislative Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

## MERITS

I now turn to the merits. I first note that although defendants' brief purports to be in support of a motion to dismiss the complaint, I see no such notice of motion in the official file, and therefore shall not consider it. I shall consider, however, the motion by defendants Heymann and Rosen to dismiss the complaint as against them since they were acting under proper authority in requesting the SCI to undertake a workmen's compensation investigation. It would appear from the papers before me that there is very little evidence tying in these two defendant to the conspiracy charge, but the lack of such evidence at this point does not mean that the allegations of the plaintiffs are not sufficient to state a cause of action under § 1985. However, unless plaintiffs can produce substantial evidence by March 26, 1973 (or any such other date as may be set by the court), of the complicity of these two defendants in a conspiracy to deprive plaintiffs or their clients of their constitutional rights, I shall sign an Order dismissing them from the suit. *See* Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972).

The contention by defendants that the § 1985 allegations of conspiracy must fall because § 1985 does not provide for injunctive relief is without merit. Although § 1985 does not on its face provide for injunctive relief, I cannot believe that a federal court is without jurisdiction to issue injunctive relief to preserve the status quo or to provide permanent relief where damages do not provide an adequate remedy in a § 1985 action. *See* Mizell v. North Broward Hospital Distr., 427 F.2d 468 (5th Cir. 1970) (Tuttle, J.). Also without merit is the defendants' contention that § 1985 does not apply to this case since plain-

tiffs allege First Amendment infringements whereas § 1985 is limited to conspiracies which seek to deprive citizens of the equal protection of the laws, or of equal privileges and immunities under the laws. The First Amendment applies to the states through the Fourteenth Amendment and is certainly one of the privileges and immunities guaranteed by the Constitution.[6]

As to plaintiffs' request in chief for relief pending a hearing for a preliminary injunction, I find on the affidavits submitted, no cause at this time to enjoin the investigation as requested. Plaintiffs have not established a *prima facie* case of bad or illicit motive on the part of the defendants. The facts in this regard are much in dispute, and indeed I do not foresee on the basis of the papers now before me that plaintiffs will succeed in proving that the investigation was undertaken for harassment purposes. Since material facts are in dispute, and since I find that plaintiffs appear to have little likelihood of success on the merits, an overall injunction would be improvident and unwarranted.

Moreover, as to plaintiffs allegations that the SCI is illegal since its grant of power is vague and overbroad, I deem that question settled by the interpretative gloss placed on the SCI's powers by the New Jersey Supreme Court in Zicarelli v. New Jersey State Commission of Investigation, 55 N.J. 249, 261 A.2d 129 (1970), affd, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). As the New Jersey Supreme Court construes the powers of the SCI, I see no merit whatsoever raised in the claims of vagueness or overbreadth.

As to plaintiffs' challenge of the authority of the SCI and its Commissioners and agents to act as they have, and as to the charge that the current investigation violates the doctrine of the separation of legislative and judicial powers, these questions arise under state law but can be asserted as pendent claims. *See* Dreyer v. Illinois, 187 U.S. 71, 84, 23 S.Ct. 28, 47 L.Ed. 79 (1902); Uphaus v. Wyman, 360 U.S. 72, 79, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (1959). The general validity of the SCI, its scope of powers, and its authority under the applicable statutes, N.J.S.A. 52:9M-1 et seq. have been settled by the *Zicarelli* case, *supra*. However, whether or not this particular investigation has been properly authorized and conducted under the applicable state rules, is perhaps, still open for judicial determination. I understand from the papers submitted that in a motion to quash a subpoena, Judge Seidman of the New Jersey Superior Court has already ruled on the validity of this investigation under state law. If this is the case, I might be foreclosed from considering this aspect of plaintiffs' pendent claims, to wit, whether or not this particular investigation was properly authorized and conducted. Since, however, I cannot be sure at this time precisely what was before Judge Seidman, and who is bound by his determination, I must make my own independent determination for present purposes. Accordingly, I find no impropriety under the applicable state statutes that warrants enjoining the investigation.

I also see no constitutional infirmity arising from plaintiffs' allegation that they were not advised of the purpose of the investigation and thus were deprived of their due process rights. *See* Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957). The affidavits submitted to me make it abundantly clear that although plaintiffs

---

6. Defendants' citation of Collins v. Hardyman, 341 U.S. 651, 660, 71 S.Ct. 937, 95 L.Ed. 1253 (1951) to intimate that § 1985 is narrow in scope in the constitutional rights which it protects is misleading. Collins found § 1985 inapplicable to a civil conspiracy to break up plaintiffs' meeting where that conspiracy was not conducted under color of state law. "We have here a case of a lawless political brawl, precipitated by a handful of white citizens against other white citizens." 341 U.S. at 662, 71 S.Ct. at 942.

were not officially notified of the workmen's compensation aspect of the investigation the first time they received a subpoena, plaintiffs did know the purpose of the investigation as of the time this action was instituted, since that purpose is properly stated on the subpoena of January 5, 1973, with which plaintiffs have not yet complied. *See* Barenblatt v. United States, 360 U.S. 109, 124, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959).

On the basis of the papers submitted, I have no reason at this time to doubt the validity and importance of the current SCI investigation. It is my understanding, that where investigating committees infringe upon or chill First Amendment rights, the courts must balance the rights of the individuals affected against those of the state. Uphaus v. Wyman, 360 U.S. 72, 80, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (1959); Barenblatt v. United States, 360 U.S. 109, 126, 79 S. Ct. 1081, 3 L.Ed.2d 1115 (1959). The state must "convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest." Gibson v. Florida Legislative Committee, 372 U.S. 539, 546, 83 S.Ct. 889, 894, 9 L.Ed. 2d 929 (1963). Although the First Amendment rights of the plaintiffs and their clients here are fundamental, the interests of the state to be considered are themselves weighty. To enjoin the entire investigation at this time would inure to the detriment of New Jersey taxpayers, and in particular, to New Jersey workmen and others who must use the courts and the services of attorneys and physicians to recover on their compensation claims. Delay in such investigations may result in irreparable harm to the state where records are lost or witnesses die. Moreover, one of the very matters under investigation—*i. e.*, the relation between medical and legal practices with regard to claims—will become of increasing importance under New Jersey's new policy of no-fault automobile insurance. On balance, I find that with respect to the investigation as a whole, for the purposes of the present application, the State has convincingly demonstrated that the information it seeks bears a substantial relation to a compelling interest of the State in proceeding with its investigation.

I do find, however, that in one narrow area, relief would be appropriate —that is with respect to the rights of clients to have unimpeded access to the courts and with respect to the closely-related state created attorney-client privilege—one that "though not yet given express constitutional security, is yet essentially interrelated with the specific constitutional guarantees of the individual's right to counsel." State v. Kociolek, 23 N.J. 400, 129 A.2d 417, 425 (1957). In this area, the clients' rights are more sensitive and more directly affected by the outstanding subpoena of January 5, 1973, and the interests of the state perhaps not so compelling.

Although federal courts should be hesitant to issue injunctive relief against state action for reasons of comity, that policy has been abrogated in § 1983 actions. Thus, for example, actions brought pursuant to § 1983 present a specific exception to the anti-injunction statute. 28 U.S.C. § 2283. Mitchum v. Foster, 407 U.S. 225, 92 S. Ct. 2151, 32 L.Ed.2d 705 (1972). Moreover, since no state criminal prosecution is pending, I would find no reason to refrain from granting relief under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Where First Amendment rights are at stake, and no state criminal prosecution is pending, plaintiffs with standing have the right to seek declaratory and/or injunctive relief before the federal courts. *See* Jordan v. Hutcheson, 323 F.2d 597 (4th Cir. 1963); Cine-Com Theatres Eastern States, Inc. v. Lordi, 351 F.Supp. 42 (D. N.J.1972). Since, however, it has been represented to me that the SCI will withdraw its blanket subpoena of January 5, 1973, and will re-serve plaintiffs with a subpoena asking for certain client files, but not for any communication

privileged under the New Jersey Attorney-Client privilege,[7] I find no reason to issue injunctive relief at this time. The protection accorded by the New Jersey Attorney-Client privilege would afford the protection necessary to secure the First Amendment rights of plaintiffs' clients.

The parties shall submit an Order consistent with this opinion.

### SUPPLEMENTAL OPINION

On February 26, 1973, the Court continued the motion of defendants Heymann and Rosen, which motion sought their dismissal from the within action. After depositions of defendants had been taken, and following several adjournments, argument was heard, and I delivered an oral opinion granting the defendants' motion on June 11, 1973. This Memorandum Opinion incorporates my Opinion delivered orally on that day.

 Plaintiffs' verified complaint charges in Count I that defendants Charles Rosen and Ronald Heymann, the Commissioner of the New Jersey State Department of Labor and Industry and his assistant, respectively, instigated an investigation of the plaintiffs in bad faith Paragraphs 17 and 18 of the complaint. As a result of the investigation, plaintiffs demand an injunction against the investigation (which thus far has been denied), and other relief, all of which applies to the New Jersey State Commission of Investigation (SCI) and its members, but *not* to defendants Heymann and Rosen. I find no relief sought in the First Count as to the defendants Heymann and Rosen. Count I of the complaint as to these two defendants shall be dismissed with prejudice and without costs.

 Count II repeats the allegations of Count I but charges a conspiracy under 42 U.S.C. § 1985. In my Opinion of April 6, 1973, I had determined that a conspiracy to deprive plaintiffs of First Amendment rights properly stated a cause of action under 42 U.S.C. § 1985. Subsequent to that time I reviewed the cases of Griffin v. Breckenridge, 403 U.S. 88, 100, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Hughes v. Ranger Fuel Corp., Division of Pittston Co., 467 F.2d 6, 10 (4th Cir. 1972); and Bricker v. Crane, 468 F.2d 1228, 1232, 1233 (1st Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (U.S.1973). I am now convinced that § 1985 requires class-based discrimination. Since no facts supporting such class-based discrimination are alleged by the plaintiffs, Count II will be dismissed against defendants Heymann and Rosen with prejudice and without costs for failure to state a cause of action upon which relief can be granted.

 Counts III and IV charge that the SCI investigation goes beyond the scope of its authority. These Counts do not involve defendants Heymann and Rosen who are not members or agents of the SCI, and thus they shall be dismissed as to these defendants with prejudice and without costs.

The parties shall submit an appropriate order reflecting these latter dispositions.

---

7. *See* New Jersey Rules of Evidence, Rule 26; In re Richardson, 31 N.J. 391, 157 A.2d 695 (1960).