**WOMEN'S HEALTH CARE SERVICES, P.A.; George R. Tiller, M.D., P.A.; George R. Tiller, M.D., Individually; and Wichita Family Planning, Inc., Plaintiffs,**

v.

**OPERATION RESCUE–NATIONAL, a/k/a Operation Rescue; Randall Terry; Patrick Mahoney; Keith Tucci; Wendy Wright; Joe Slovenec; and Jim Evans, Defendants.**

No. 91–1303–K.

United States District Court, D. Kansas.

Aug. 7, 1991.

**260**

John E. Cowles, of McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., for Women's Health Care Services and George R. Tiller.

Dale V. Slape, of Slape & Howard, Wichita, Kan., for Wichita Family Planning, Inc.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

On July 23, 1991, the court entered a temporary restraining order prohibiting, among other things, defendant Operation Rescue from blocking the entrances or exits to the Wichita, Kansas clinic operated by plaintiff Women's Health Care Services, P.A. On August 5, 1991, the court took up for hearing whether to issue a preliminary injunction against the defendants, collectively known herein as Operation Rescue. At the same time, the court took up the motion to dismiss filed by Operation Rescue on August 1, 1991. For the reasons stated by the court during the hearing on the motions immediately before the court, and for the reasons stated herein, the motion of defendants Operation Rescue is hereby denied. The court hereby reaffirms its entry of the preliminary injunction, which follows and enlarges upon the terms of its earlier temporary restraining order.

Initially, the court notes that several of the issues presented herein may be resolved upon the Supreme Court's decision in *Bray v. Alexandria Women's Health Clinic,* — U.S. —, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991) (granting *cert.*). However, the same exigent circumstances which warrant the granting of injunctive relief, lest irreparable injury occur to the plaintiffs, also mandate an expeditious treatment of the issues before the court.

Nor have the issues herein escaped the attention of other courts. The great majority of these courts, when faced with activities similar to those of the defendants herein, and in many instances involving the same defendants, have issued injunctive or other relief to protect the rights of the plaintiffs. *See Planned Parenthood Assn. of San Mateo County v. Holy Angels Catholic Church,* 765 F.Supp. 617 (N.D.Cal.1991); *NOW v. Operation Rescue,* 747 F.Supp. 760 (D.D.C.1990); *Southwestern Medical Clinics v. Operation Rescue,* 744 F.Supp. 230 (D.Nev.1989); *NOW v. Operation Rescue,* 726 F.Supp. 1483 (E.D.Va.1989), *aff'd,* 914 F.2d 582 (4th Cir. 1990), *cert. granted sub nom. Bray v.*

*Alexandria Women's Health Clinic,* —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991); *Cousins v. Terry,* 721 F.Supp. 426 (N.D.N.Y.1989); *New York State NOW v. Terry,* 704 F.Supp. 1247 (S.D.N.Y.), *aff'd,* 886 F.2d 1339, 1359 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Roe v. Operation Rescue,* 710 F.Supp. 577 (E.D.Pa.1989), *aff'd,* 919 F.2d 857 (3rd Cir.1990); *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 712 F.Supp. 165 (D.Or. 1988), *aff'd,* 859 F.2d 681 (9th Cir.1988); *Northeast Women's Center, Inc. v. McMonagle,* 665 F.Supp. 1147 (E.D.Pa.1987), *aff'd,* 868 F.2d 1342 (3rd Cir.1989). *See also Northern Virginia Women's Medical Center v. Balch,* 617 F.2d 1045 (4th Cir. 1980). *But cf. Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788, 794 (5th Cir.1989); *Roe v. Abortion Abolition Soc'y,* 811 F.2d 931 (5th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987); *National Abortion Federation v. Operation Rescue,* 721 F.Supp. 1168 (C.D.Cal.1989), *app. pending,* Case No. 90–55199 (9th Cir.).

In seeking a preliminary injunction, the movant must establish four factors: (1) irreparable injury to the movant, (2) that the threatened injury outweighs whatever damage may be caused by the injunction, (3) the injunction is not adverse to the public interest, and (4) there is a substantial likelihood the movant will eventually prevail on the merits. *Tri–State Generation & Transmission Ass'n v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir.1986).

■ The movant need only show a reasonable probability of success; it is not necessary that she demonstrate an "overwhelming" likelihood of victory. *Atchison, T. & S.F. Ry. v. Lennen,* 640 F.2d 255, 261 (10th Cir.1981). Moreover, if the movant successfully demonstrates the first three elements, the burden of proof on the remaining element is lessened; it is enough if the movant has raised questions on the merits sufficiently difficult and substantial so as to render the issues "a fair ground for litigation and thus for more deliberate investigation." *Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780, 782 (10th Cir.1964).

■ A preliminary injunction's purpose is to "preserve the status-quo" while the case is resolved. *Tri–State,* 805 F.2d at 355. The temporary or preliminary injunction serves the same purpose under Kansas law. *Comanche County Hospital v. Blue Cross of Kansas, Inc.,* 228 Kan. 364, 366, 613 P.2d 950 (1980). *See Wichita Wire, Inc. v. Lenox,* 11 Kan.App.2d 459, 461, 726 P.2d 287 (1986) (finding federal four-factor test appropriate under Kansas law).

■ The purpose of Operation Rescue's mission in Wichita is to interfere with the constitutionally protected rights of women. As acknowledged by counsel for Operation Rescue during the hearing on the present motion, the purpose of Operation Rescue "is to prevent women from having abortions." The tactics employed by the organization in furtherance of that goal, also as admitted by counsel for Operation Rescue, include "sidewalk counseling" in which Operation Rescue seeks to abuse, harass, or intimidate women patients of the plaintiffs so that they do not enter the plaintiffs' clinics. The second tactic used is to physically blockade the driveways and doors of the clinics, thereby preventing anyone from entering.

In the course of the present hearing, and during previous hearings for contempt against several of the principals of Operation Rescue, this court has heard the testimony of several witnesses familiar with the situation presented by Operation Rescue's activities in Wichita. In addition, plaintiff has submitted videotape recordings of protests at the sites of both the clinic on Kellogg Avenue operated by plaintiff Women's Health Care Services and the clinic on Central Avenue operated by plaintiff Wichita Family Planning. These videotapes were accepted into evidence without objection by Operation Rescue.[1]

1. In addition to the evidence directly before the court, Operation Rescue has stipulated to the

truth of the findings of the case currently on *certiorari* to the Supreme Court from the 4th

**262**

When employing the tactic of physically blockading the clinics, Operation Rescue has succeeded in its avowed intent to "shut them down." The court has carefully reviewed the videotape evidence submitted by plaintiffs. These videotapes demonstrate the utter lack of spontaneity of tortious and criminal actions of the individual protestors who make up Operation Rescue. Rather, the individual and collective acts of lawlessness consistently occur at the behest or direction of either the named defendants Terry, Evans, Mahoney, Tucci, or another of a small group of leaders of the organization.

These leaders often wear distinctive clothing to assist in their control of the protesting crowds. The leaders communicate with each other by means of cellular telephones and hand radios, and with the crowd as a whole via bullhorns. The overall mass of protestors is divided into different "teams," which then dutifully march into place upon the instructions of a given leader. To the extent that they are identifiable by the court, all of the leaders supervising the operations of the tortious and criminal actions appear to be national participants in Operation Rescue and are not from Wichita; none of the site leaders are women.

In pursuing their goal of preventing women from having abortions, Operation Rescue has not limited itself to the blocking of the private driveways leading to the clinics. The videotapes demonstrate also the intentional blocking of public streets at the direction of Operation Rescue leaders. Protest participants routinely enter upon the private yards of other homes. Nor have the protests been limited to passively blocking the entrances to the clinics. There is evidence that the locks to the doors of both clinics have been sabotaged by the insertion of foreign substances into the door keyholes, thereby rendering it impossible to open the doors.

The protestors have also acted to frustrate or delay effective police action. Upon arrest, and with the acquiescence of either the Wichita police or the City of Wichita, individual protestors move in a slow motion, heel-to-toe fashion, thereby greatly delaying the speed with which officers can clear the entryways. In addition, many protestors have refused to identify themselves to booking officers, giving their names as either John or Jane Doe.

The court finds that the requested preliminary injunction satisfies the first three requirements for injunctive relief. First, the plaintiffs have demonstrated the likelihood of irreparable injury, for which legal remedies are inherently inadequate. The plaintiffs seek to prevent the blockading of clinics providing abortion-related medical services. The actions of Operation Rescue, in interfering with and seeking to "shut down" the plaintiffs, violate the constitutional rights of the clinics' patients. Further, these actions represent illegal trespass, tortious disruption of legal contractual relations, and create a public and private nuisance. These actions interfere with the rights of the plaintiffs to peaceably enjoy their property and to conduct legitimate business relations. The same actions intrude upon rights to privacy and travel of the patients of the plaintiffs. The plaintiffs lack a full, complete, and adequate remedy at law, thereby providing support for injunctive relief under Kansas law. *See Wichita Wire,* 11 Kan.App.2d at 465, 726 P.2d 287.

The court does not doubt the sincerity of the opinions held and expressed by many of the individual members of Operation Rescue. But the injunctive relief granted by temporary restraining order, and further implemented by the preliminary injunction adopted herein, is narrowly tailored to protect the legitimate First Amendment rights of Operation Rescue. Members of that group may still protest the provision of abortion-related services if they so choose.

Circuit, *NOW v. Operation Rescue,* 726 F.Supp. 1483 (E.D.Va.1989), *aff'd,* 914 F.2d 582 (4th Cir. 1990), *cert. granted sub nom. Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991), as illustra-

tive of the goals and methods of Operation Rescue. The court adopts the findings of the district court and the 4th Circuit in *Bray* as findings of fact herein.

The injunction restricts not legitimate rights of protest, but the tortious interference with the rights of others. Accordingly, the court holds that the threatened injury to the plaintiffs and their patients outweighs any potential harm to Operation Rescue arising from the injunction.

Finally, the court finds the preliminary injunction serves the public interest. It is uncontested that the Wichita activities of Operation Rescue have caused the city substantial loss and expense. The injunction protects the First Amendment rights of Operation Rescue, while protecting the rights accorded under federal and state law to plaintiffs and their patients. Denying the injunction, the court finds, would imperil the health and safety of plaintiffs' patients, injure the legitimate economic rights of the plaintiffs, cause further expense and harassment for the police forces of the City of Wichita, yet do nothing to further the legitimate First Amendment rights of Operation Rescue.

Having found the first three elements necessary for injunctive relief, the court may grant that relief upon a showing by the plaintiffs that the case involves a serious and substantial issue or issues which serve as a fair ground for litigation. The court finds that the plaintiffs have met this burden. Indeed, though it is not a prerequisite for the granting of injunctive relief given the other findings of the court, the court finds upon the record before it that the plaintiffs have demonstrated a substantial likelihood of ultimate success on the merits. Accordingly, the court will grant the relief sought by the plaintiffs.

In reviewing the existence of the likelihood of ultimate success on the issues presented herein, or the alternative existence of a fair subject for litigation and thus deliberate investigation, the court will review the various claims for relief advanced by the plaintiffs. In the course of this analysis, the court will also have occasion to address the merits of the motion to dismiss filed by Operation Rescue.

**A. Federal Claims—Section (1985) (3)**

*1. Class-based Animus*

Operation Rescue suggests that dicta contained in *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984), and *Brown v. Reardon,* 770 F.2d 896 (10th Cir.1985), requires the limitation of § 1985(3) to instances of conspiracies arising from a racial animus. In both cases, the Tenth Circuit relied upon the Supreme Court's decision in *United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), in which the court held that a private conspiracy founded on an economic or commercial animus was not actionable under § 1985(3). The majority in *Scott* did not reach the issue of whether forms of invidious discrimination, other than racial, could satisfy the animus requirement of § 1985(3).[2]

Applying the analysis of the Supreme Court from *Scott,* the Tenth Circuit stated in *Wilhelm:*

In summary as to the *Scott* opinion, we find nothing therein to give any encouragement whatever to extend § 1985 to classes other than those involved in the strife in the South in 1871 with which Congress was then concerned. In fact from *Scott* we get a signal that the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court.

720 F.2d at 1176. The Tenth Circuit affirmed this view in *Brown,* where it indicated that it was necessary to affix a requirement that the discriminatory conspiracy be founded on an invidious, class-based animus, lest "a general federal common law of torts aris[e] from § 1985 cases." 770 F.2d at 907.

**2.** The district court and the Fifth Circuit had held that invidious discrimination, other than racial, could satisfy the requirements for an action under § 1985(3). *Scott v. Moore,* 461 F.Supp. 224, 229 (E.D.Tex.1978), *aff'd in part,* 680 F.2d 979, 991 (5th Cir.1982), *rev'd,* 463 U.S. at 825, 103 S.Ct. at 3352. The four dissenting Justices in *Scott* agreed, indicating that a discriminatory conspiracy based on "certain class traits, such as race, religion, sex, and national origin" violate § 1985(3). 463 U.S. at 853, 103 S.Ct. at 3369 (Blackmun, J., dissenting).

Yet it reads too much into these cases to suggest that a conspiracy premised on gender-based animus is immune from action under § 1985(3). Like *Scott*, neither *Wilhelm* nor *Brown* involved gender-based discrimination. *Wilhelm* involved an allegation of discrimination against a class of handicapped individuals. *Brown* involved an allegation that the defendants had discriminated against the plaintiffs on the basis of their local political activity.

■ Under *Brown*, a conspiracy which is not the result of an invidiously discriminatory animus is not actionable under § 1985(3). The defendant must act from a class-based, invidiously discriminatory animus. *Dixon v. City of Lawton*, 898 F.2d 1443 (10th Cir.1990) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). But the Tenth Circuit has never held that invidious gender-based discrimination enjoys immunity from attack under § 1985(3). Indeed, as the court noted in *Dixon*, the animus element of the statute requires that the conspiracy be "driven by 'some racial *or otherwise class-based* discriminatory animus.'" 898 F.2d at 1447 (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798) (emphasis added).[3] *See also Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 n. 2 (10th Cir.1990); *Martinez v. Winner*, 771 F.2d 424, 440 (10th Cir.1985).

■ This court concludes that a conspiracy motivated by gender-based animus is actionable under § 1985(3). *See Scott v. City of Overland Park*, 595 F.Supp. 520, 528–29 (D.Kan.1984) (citing cases). Of the circuits addressing the issue, the clear majority has found that gender-based discrimination satisfies the class animus element of

§ 1985(3). *NOW v. Operation Rescue*, 914 F.2d at 585; *New York State NOW v. Terry*, 886 F.2d at 1359; *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir.1988); *Stathos v. Bowden*, 728 F.2d 15, 20 (1st Cir.1984); *Novotny v. Great American Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1243–44 (3d Cir.1978), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Life Ins. Co. v. Reichardt*, 591 F.2d 499, 505 (9th Cir.1979); *Conroy v. Conroy*, 575 F.2d 175, 177 (8th Cir.1978). *But see Mississippi Women's Medical Clinic v. McMillan*, 866 F.2d 788, 794 (5th Cir.1989).

■ Operation Rescue next argues that, even if gender-based discriminatory conspiracies are actionable under § 1985(3), the present action still will not lie. Operation Rescue argues that it has no animus against women, only women seeking abortions. Its targeted class, Operation Rescue contends, is not a class protected under § 1985(3).

In this context, Operation Rescue cites the affidavit of defendant Terry, who avers that in the group's goal of "shutting down" the plaintiffs, Operation Rescue seeks to bar the entrance of any person, male or female, doctor or patient, into a given clinic. The court, however, finds this attempted distinction facile and irrelevant. It is not the purpose of Operation Rescue to prohibit doctors from entering clinics. During the proceedings relating to his contempt citation, Mr. Terry informed this court that he did not object to physicians performing nonabortion-related medical practices. Moreover, the court finds on the basis of the hearing on the present motions that Operation Rescue has allowed male, but not female patients, to enter the various clinics.[4]

---

**3.** In *Griffin,* the Court expressly refused to decide whether a discriminatory animus other than racial bias could satisfy the intent requirement of § 1985(3). 403 U.S. at 102, n. 9, 91 S.Ct. at 1798, n. 9. The Court therefore held that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* It is perhaps not insignificant that in its citation to *Griffin* in *Dixon,* the Tenth Circuit dropped the "perhaps."

**4.** While Operation Rescue has not prevented *male* patients from entering the clinics, it has prevented *female* patients from entering the clinics, even when the purpose of entering the clinic was not abortion-related. One of the videotapes reveals an incident in which a prospective patient at the clinic on Central Avenue was cut by glass thrown on the sidewalk by Operation Rescue protestors. The victim had to be transported elsewhere for medical attention, since the protestors would not allow her to enter the clinic for treatment of the laceration.

The blocking of entry into the clinics is not the goal, but the means by which the defendants seek to obtain their goal. That goal is the elimination of the right to obtain an abortion. Necessarily, that goal infringes the rights of women, and the rights of women only. The patients of the plaintiffs herein form a gender-based class supporting the application of § 1985(3). *N.O.W. v. Operation Rescue,* 726 F.Supp. 1483 (E.D.Va.1989), *aff'd,* 914 F.2d 582 (4th Cir.1990), *cert. granted sub nom. Bray v. Alexandria Women's Health Clinic,* ——— U.S. ———, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991); *New York State NOW v. Terry,* 704 F.Supp. 1247, 1258–59 (S.D.N.Y.1989), *aff'd,* 886 F.2d 1339, 1359 (2d Cir.1989), *cert. denied,* ——— U.S. ———, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 712 F.Supp. 165 (D.Ore.1988).

As the District Court for the Northern District of California has recently observed,

> [w]omen as a group have been accorded semi-suspect class status by the courts, and laws which discriminate on the basis of gender are accorded heightened scrutiny. That women seeking abortions is a subset of the class of women should make no difference. Aside from the fact that only women get pregnant, Congress has legislated in Title VII to protect pregnant women from discrimination.

> Defendants also contend that their actions display no animus because they harbor no ill-will toward the patients at the clinic, but merely conscientiously object to abortion. Defendants would be correct if they merely opposed abortion. But they have acted on their opposition in such a way as to deprive women of their rights.

*Planned Parenthood,* 765 F.Supp. at 623.

This court concurs, and finds that a conspiracy which is directed at depriving women of a constitutional right, a right which arises from the natural qualities of womanhood and so is extended to women uniquely, reflects a discriminatory animus which is actionable under § 1985(3).

## 2. Right to Privacy

■ The plaintiffs' § 1985(3) claim is premised in part of the right to privacy guaranteed under the Fourteenth Amendment. The Fourteenth Amendment, however, addresses only state action which interferes with constitutionally protected rights; it affords no protection against purely private action. To state a claim under § 1985(3), the plaintiff need not demonstrate the existence of state actors in the conspiracy. It is sufficient if the plaintiff demonstrates state involvement generally, or that the conspiracy is directed at influencing the activity of the state. *Scott,* 463 U.S. at 830, 103 S.Ct. at 3357.

In certain circumstances, private action which inhibits or thwarts the ability of the state to guarantee equal protection may cause the state either unwillingly or unwittingly to further the ends of the conspiracy. "[I]f private persons take conspiratorial action that prevents or hinders the constituted authorities of any State from giving or securing equal treatment, the private persons would cause those authorities to violate the 14th Amendment; the private persons would then have violated § 1985(c)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 384, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (1979) (Stevens, J., concurring). Accordingly, several courts have found that where similar conspiracies have failed to cooperate with law enforcement officers by failing to inform them of the identity of the clinic currently under target, such conspiracies have served to thwart effective law enforcement, and so constituted state action for purposes of § 1985(3). *See Portland Feminist Women's Health Center,* 712 F.Supp. at 168; *New York NOW v. Terry,* 704 F.Supp. at 1260. *But cf. NOW v. Operation Rescue,* 726 F.Supp. at 1493–94 n. 11.

■ In the present case, the court finds that Operation Rescue has purposefully acted to interfere with the ability of the local law enforcement authorities to protect the rights of the plaintiffs and their patients. By targeting Wichita as the focus of its national efforts, Operation Rescue has virtually overwhelmed the resources of

the city's relatively small police forces to respond with dispatch and effectiveness. The actions of the defendants herein transcend those found to fulfill the state action requirement in *Portland Feminist Women's Health Center*. Operation Rescue has not only failed to keep the police apprised of their intended actions, they have also, as discussed earlier in this opinion, engaged in tactics which are designed to blunt the effectiveness of police action when it occurs.

The court therefore finds that the plaintiffs have satisfied their burden to demonstrate state involvement in the defendants' conspiracy by demonstrating the existence of purposeful conduct designed to circumvent effective police protection of the plaintiffs and their patients. Moreover, the court notes, it would in any event be compelled to deny the defendants' motion to dismiss at the current time. Significant issues of fact exist which would render it error for the court to dispose of the claims presented herein by means of the defendants' motion to dismiss.

■ State involvement in a given conspiracy may occur when the state, unintentionally and unwillingly, furthers the goals of the conspiracy, as discussed by Justice Stevens in *Novotny*, 442 U.S. at 384, 99 S.Ct. at 2355. Under such circumstances, the state may act as the unwitting dupe of the conspirators. However, state involvement may also occur under less innocent circumstances, as when the state knows of the existence of the defendant's conspiracy but turns a blind eye to its evils. The state then plays the role of the conspirators' accomplice rather than their hapless stooge.

In the present case significant questions exist as to the lack of zeal displayed by the City of Wichita in defending the legal rights of the plaintiffs and their patients. Such questions cannot be resolved on the basis of the record contained herein, and their resolution must await another day. It is sufficient for present purposes to take note of their existence as a question of fact precluding the acceptance of defendants' motion to dismiss. Moreover, as noted earlier, the court finds that the actions of Operation Rescue in attempting to thwart effective state action in protecting the rights of the plaintiffs and their patients satisfies the state involvement required for an action under § 1985(3).

*3. Right to Travel*

■ Unlike the claim alleging an infringement of the right to privacy, it is not necessary that a plaintiff claiming a violation of the right to travel demonstrate state action. The right to travel is protected not merely from state action but from private interference as well. Accordingly, the plaintiff in a § 1985(3) action alleging a violation of the right to travel is not required to demonstrate the existence of state action. *Griffin v. Breckenridge*, 403 U.S. 88, ·105–06, 91 S.Ct. 1790, 1800, 29 L.Ed.2d 338 (1971) (citing *Shapiro v. Thompson*, 394 U.S. 618, 629–31, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600 (1969)).

The Supreme Court has recognized explicitly that the right to travel includes the right to travel to obtain abortion-related medical services. *Doe v. Bolton*, 410 U.S. 179, 200, 93 S.Ct. 739, 751, 35 L.Ed.2d 201 (1973). In *Doe*, the Court held:

Just as the Privileges and Immunities Clause, Const. Art. IV, § 2 protects persons who enter other States to ply their trade, so must it protect persons who enter [a State] seeking the medical services that are available there. A contrary holding would mean that a State could limit to its own residents the general medical care available within its borders. This we could not approve.

410 U.S. at 200, 93 S.Ct. at 751–52 (citations omitted).

■ The uncontroverted facts establish that a significant portion of the patients served by both plaintiff Women's Health Care Services and plaintiff Wichita Family Planning are not from Kansas. During the time period of Operation Rescue's activities in Wichita, some 8 to 10% of the scheduled patients of Wichita Family Planning were from another state. During the same period, some 44% of the patients of the clinic operated by Women's Health Care Services

were from outside Kansas. The court accordingly finds that a significant number of persons, desiring to travel interstate to obtain abortion-related medical services in Kansas, have been hindered in that desire by Operation Rescue.

Operation Rescue suggests that because it is interfering with the rights of all persons seeking access to the plaintiff clinics, the right to travel of persons outside Kansas is irrelevant.[5] The court, however, finds that the defendants may not escape liability under § 1985(3) by the mere expediency of enlarging the scope of their conspiracy to include local victims as well. The defendants have engaged in a private conspiracy, premised on and arising from an invidiously discriminatory class-based animus, and have thereby infringed the rights of certain patients to travel interstate to obtain medical services. It is not a defense to an action under § 1985(3) that the plaintiffs have also conspired against persons who do not enjoy the protection of the statute.

### 4. Injunctive Relief

 Operation Rescue argues that injunctive relief is not available under § 1985(3), stressing that the explicit terms of the statute provide only for monetary relief. Operation Rescue emphasizes the Supreme Court's observation in *Great American Federal Savings and Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979), that § 1985(3) "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates."

None of the arguments advanced by Operation Rescue compels the conclusion that injunctive relief, although not expressly provided under § 1985(3), may not be granted where money damages would be inadequate. Nor is the primarily remedial purpose of the statute a bar to the granting of injunctive relief.

The clear majority of decisions addressing the issue have upheld the granting of injunctive relief pursuant to § 1985(3). *See Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971); *Mizell v. North Broward Hosp. Dist.*, 427 F.2d 468 (5th Cir.1970); *Brewer v. Hoxie School Dist. No. 46*, 238 F.2d 91 (8th Cir.1956); *Gaulter v. Capdeboscq*, 404 F.Supp. 900 (E.D.La.1975), *aff'd in part & rev'd in part on other grounds*, 594 F.2d 127 (5th Cir.1979); *Freeman and Bass, P.A. v. New Jersey Com'n of Investig.*, 359 F.Supp. 1053 (D.N.J.1973); *Patton v. Bennett*, 304 F.Supp. 297 (D.Tenn.1969). *Cf. Cuban v. Kapoor Bros., Inc.*, 653 F.Supp. 1025 (E.D.N.Y.1986); *Mullarkey v. Borglum*, 323 F.Supp. 1218 (S.D.N.Y.1970). Indeed, injunctive relief has been repeatedly granted pursuant to § 1985(3) against persons seeking to blockade abortion clinics. *See, e.g., Southwestern Medical Clinics*, 744 F.Supp. at 230; *NOW v. Operation Rescue*, 726 F.Supp. at 1483; *Cousins v. Terry*, 721 F.Supp. at 426.

The inference which underlies the argument of Operation Rescue, that because the statute does not expressly authorize injunctive relief such relief may not be granted, is an inference which cannot be made given the basic, underlying purpose of the statute. The "predominant purpose of § 1985(3) was to combat" conspiracies premised on invidiously discriminatory animus. *See Scott*, 463 U.S. at 836, 103 S.Ct. at 3360. That combat, however, is seriously undermined if the tools of battle of § 1985(3) are limited to money damages alone. There is nothing in § 1985(3) which sounds retreat from the general rule which authorizes the use of equitable remedies when legal remedies are inadequate. Nowhere does § 1985(3) expressly exclude the use of injunctive relief. Acceptance of the argument advanced by Operation Rescue seriously undermines the central purpose of § 1985(3). It is an inference that should not be made.

Yet even assuming the validity of Operation Rescue's arguments relating to the

---

5. In any event, the court finds that the infringement of interstate travel has played an essential role in the motivation for Operation Rescue's activities in Wichita. The court takes note of the public statements of Operation Rescue leaders which emphasize the "national" role played by plaintiff Wichita Health Care Services in allegedly supplying late-term abortions.

268

lack of injunctive relief under § 1985(3), the court would still find it necessary to maintain the injunctive relief accorded previously and extended herein. The motion to dismiss filed on behalf of Operation Rescue addresses itself solely to the authority of the court to grant injunctive relief under federal law. But it is clear that, where the remedy at law will be inadequate, this court has the power to enjoin continued violation of the pendent state claims. *Roe v. Operation Rescue*, 919 F.2d at 867. *See Northern Virginia Women's Medical Center*, 617 F.2d at 1049 (upholding injunction against anti-abortion protestors on pendent state law claims); *Portland Feminist Women's Health Center v. Advocates For Life, Inc.*, 681 F.Supp. 688, 691–692 (D.Or. 1988) (upholding preliminary injunction against anti-abortion protestors on pendent state law claims after § 1985(3) claim was dismissed).

Kansas courts have explicitly recognized the authority to enjoin a trespass, *Mendenhall v. School Dist. No. 83*, 76 Kan. 173, 90 P. 773 (1907); private nuisance, *King v. American Rock Crusher* 119 Kan. 618, 240 P. 394 (1925); and public nuisance, *State ex rel. Harley v. Cline*, 151 Kan. 764, 100 P.2d 637 (1940). Even if the federal claims against the defendants were dismissed, this court concludes specifically that, in its discretion and in the interests of judicial economy and a prompt resolution of the present dispute, continued jurisdiction over the pendent state claims is warranted and that injunctive relief on those claims is justified.

### B. State Claims

The court further finds that injunctive relief is warranted under state law, given the tortious actions of Operation Rescue under the law of Kansas. The court finds that the plaintiffs have presented claims sounding in state law, which arise from a nucleus of operative fact common to the underlying federal claims, and upon which the plaintiffs have demonstrated a substantial likelihood of ultimately prevailing. Indeed, as the counsel for Operation Rescue explicitly admitted during the hearing on the present matter, Operation Rescue has committed trespass in its activities, and

perhaps the other torts complained of by the plaintiffs as well.

The court further finds that, as with the federal claims presented by the plaintiffs, the pendent state claims do not reflect matters for which legal remedies are adequate. Rather, the actions of Operation Rescue represent a conspiracy to engage in tortious behavior, infringing rights which cannot be adequately denominated in a legal award. Moreover, the court finds that the injunction issued by the court furthers the public interest, and that its issuance does not impair any legitimate right of Operation Rescue, while denial of the injunction would seriously injure the interests of the plaintiffs.

### 1. Trespass

A trespass involves the entry without privilege or consent onto the property of another. *Riddle Quarries v. Thompson*, 177 Kan. 307, 279 P.2d 266 (1955). Several courts have issued or authorized injunctive relief predicated on pendent trespass claims. *See Southwestern Medical Clinics*, 744 F.Supp. at 233; *NOW v. Operation Rescue*, 726 F.Supp. at 1494–95; *Roe v. Operation Rescue*, 710 F.Supp. at 584. As noted earlier, Operation Rescue has conceded that its actions in Wichita represent violations of the state tort of trespass.

### 2. Interference with Business Relations

Kansas law renders illegal the action of inducing, without privilege, a third person from engaging in or performing a contract with another. *Baruch v. Beech Aircraft*, 175 F.2d 1 (10th Cir.), *cert. denied*, 338 U.S. 900, 70 S.Ct. 251, 94 L.Ed. 554 (1949). A plaintiff claiming improper interference with business must demonstrate the existence of actual or prospective contractual relations, that the defendant knew of those relations but intentionally interfered with them without justification, and that this interference resulted in harm to the plaintiff. *Id.*

The court finds on the basis of the evidence submitted herein, that the actions of the defendants represent a fair basis for

alleging tortious interference with business relations. The relationship herein between clinic or physician and the patients seeking medical services is manifest. That the relationship is contractual is equally obvious.[6] Abortion protests which intentionally seek to disrupt the economic relationship between physician and patient constitute tortious interference with economic relations which may be enjoined by the court. *See Southwestern Medical Clinics,* 744 F.Supp. at 233; *Roe v. Operation Rescue,* 710 F.Supp. at 584–86. Operation Rescue's action in deliberately interposing itself into these relationships exposes it to liability for its tortious behavior under Kansas law.

### 3. Public and Private Nuisance

▇▇▇ Under Kansas law, a nuisance is defined as an annoyance which interferes with or obstructs the reasonable and comfortable use and enjoyment of the property of another. *Allen v. City of Ogden,* 210 Kan. 136, 139–40, 499 P.2d 527 (1972). A nuisance is an interference with a citizen's rights, whether in person, property, or in the enjoyment thereof, an annoyance causing trouble or vexation, working hurt, inconvenience, or damage. *Hofstetter v. George M. Myers, Inc.,* 170 Kan. 564, 228 P.2d 522 (1951).

▇▇▇ A private nuisance is a civil wrong, based upon a disturbance of some right or interest in land. *Culwell v. Abbott Constr. Co.,* 211 Kan. 359, 362, 506 P.2d 1191 (1973). A public nuisance, on the other hand, affects an interest common to the general public rather than an interest affecting a single individual, annoying thereby a substantial portion of the community. *Id.,* at 363, 506 P.2d 1191. A private individual may bring an action for public nuisance, if he has received from it some special, peculiar, or individual injury. *Venard v. Cross,* 8 Kan. 248 (1871). A public nuisance arising from anti-abortion activities may authorize the granting of injunctive relief. *NOW v. Operation Rescue,* 726 F.Supp. at 1495.

In the present case, the evidence is not in controversy. The protests conducted by Operation Rescue do not involve mere trespass upon the private property of the plaintiffs, but upon the property of neighbors, as well as the blocking of public streets and thoroughfares and the hinderance of legal traffic upon those streets. The court finds that the plaintiffs have presented evidence indicating a substantial likelihood of ultimately demonstrating the existence of both public and private nuisance. Further, the court concludes that injunctive relief is both warranted and essential to protecting the rights of the plaintiffs, the patients, and the citizenry of Wichita.

### C. Motion to Stay

On August 6, 1991, the day following the court's entry of the preliminary injunction, Operation Rescue moved for a stay of the matter pending appeal. At the same time, the United States Attorney filed a motion for leave to file an amicus curiae brief on behalf of Operation Rescue. The court denied the motion for stay, while granting the United States leave to file its brief.

The motion to stay of Operation Rescue was not zealously argued. It is a motion which borders on the frivolous. In its findings from the bench, and as restated in this opinion, the court has specifically determined that this is a matter which does not admit further delay. In granting the plaintiffs' motions for a preliminary injunction, the court has found that a delay in resolving this matter, and allowing the rights of the plaintiffs to languish further, will work irreparable harm to the plaintiffs. To contend now that the motion should be stayed pending appeal directly disregard the findings of this court.

The court finds that, given the lawlessness of Operation Rescue and the willingness of its leaders to disregard as well the orders of this court, that significant injunctive relief, with accompanying sanctions of similar gravity, must issue. To do otherwise would imperil the rule of law. As another court has recognized when dealing

---

**6.** Members of Operation Rescue often stress the "profit-related" nature of the plaintiffs' medical services.

with this organization, given the zealotry of their beliefs, it is necessary to fix substantial penalties for violations of the injunction. *NOW v. Operation Rescue*, 747 F.Supp. 760, 777 (D.D.C.1990).

This court has expressed its profound disappointment at the United States for its entry into the present dispute. The issues addressed herein doubtless will be resolved at a higher level than this court. It is the purpose and obligation of this court to uphold the laws of the United States and the State of Kansas, and to protect the persons, property, and liberties of the individuals within its jurisdiction. This court will fulfill that obligation and that purpose, though in doing so it is ill-served by the action of the United States.

IT IS ACCORDINGLY ORDERED this 6 day of August, 1991, that the defendants' Motion to Dismiss (Dkt. No. 26) and Motion to Stay Pending Appeal (Dkt. No. 53) are hereby denied, while the motion of the United States to file a brief as amicus curiae (Dkt. No. 56) is hereby granted. The preliminary injunction entered by the court on August 5, 1991, shall remain in effect for the reasons stated herein.